# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Steve Fotoudis, )<br><br>          Plaintiff, )<br><br>  vs. )<br><br>City and County of Honolulu; )<br>Lois Kealoha, in his individual capacity; )<br>and, John Does 1-50 in their individual )<br>or official capacities. )<br><br>          Defendants. )<br> ) | CASE No. 1:14-CV-00333<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

**MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER AND
<u>IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

I.  **LEGAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  **FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  **ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  **Mr. Foutodis will likely succeed on the merits.** . . . . . . 4

        1.  Mr. Fotoudis' core Second Amendment
           rights continue to be violated. . . . . . . . . . . . . . . . . . . 4

        2.  Mr. Foutodis has been denied equal
           protection of the laws. . . . . . . . . . . . . . . . . . . . . . . . 8

        3.  Mr. Fotoudis' Due Process Rights
           have been violated. . . . . . . . . . . . . . . . . . . . . . . . . . 14

    B.  **Mr. Fotoudis will be irreparably harmed.** . . . . . . . . . . 14

    C.  **The balance of equities tips sharply in
        Mr. Fotoudis' favor.** . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    D.  **The injunction serves the public's interests.** . . . . . . . . 18

IV.  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## Reported Cases

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995) . . . . . . . . .  12

*Associated General Contractors v. Coalition for Economic Equity*,
950 F.2d 1401 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Chan v. City of Troy*, 559 N.W.2d 374. (Mich.Ct.App. 1997) . . . . . .  10

*Collins v. Brewer*, 727 F. Supp. 2d 797 (D. Ariz. 2010) . . . . . . . . . . .  15

*District of Columbia v. Heller*, 554 U.S. 570 (2008) . . . . . . . . . . . . .  4, 5, 7

*Fletcher v. Haas*, 851 F.Supp.2d 287 (D. Mass 2012) . . . . . . . . . . . . .  7, 11, 13

*Freminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) . . . . . . . . . . . . .  18

*Graham v. Richardson*, 403 U.S. 365 (1971) . . . . . . . . . . . . . . . . . . .  9, 10

*Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953) . . . . . . . . . . . . . .  6

*McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020 (2010) . . . . . . . .  4-5

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997) . . . . . .  15

*People v. Nakamura*, 62 P.2d 246 (Colo. 1936) . . . . . . . . . . . . . . . . .  10

*People v. Rappard*, 28 Cal.App.3d 302,
104 Cal.Rptr. 535 (Cal.App. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sammartano v. First Judicial District Court Carson City*,
303 F.3d 959 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18-19

*Sandiford v. Commonwealth*, 225 S.E.2d 409 (Va. 1976) . . . . . . . . .  10-11, 13

*Smith v. South Dakota*, 781 F.Supp.2d 879 (D. S.D. 2011) . . . . . . . . . 11

*State v. Chumphol*, 634 P.2d 451 (Nev. 1981) . . . . . . . . . . . . . . . . . . 11, 13

*Takahashi v. Fish & Game Commission*, 334 U.S. 410 (1948) . . . . .   9

*Toll v. Moreno*, 458 U.S. 1 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Tom v. Sutten*, 533 F.2d 1101 (9th Cir. 1976) . . . . . . . . . . . . . . . . . .   15

*United States v. Lopez-Flores*, 63 F.3d 1468 (9th Cir. 1995) . . . . . .   9

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) . . . . . . . .   6-7, 8

*Winter v. Natural Resources Defense Council, Inc.*,
129 S.Ct. 365 (2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 17, 18

**Unreported Cases and Dispositions**

*Alexander Say v. John Adams, et.al.*,
 No. 3:07-cv-377-R, 2008 wl 718163 (D. Ky. March 14, 2008) . . . .   11, 15, 17,
                                                                        18, 19

*Carlos Nino de Rivera Lajous v. David Sankey*,
No. 4:13-cv-03070 (D. Neb. Oct. 15, 2013) (**Exhibit Eight**) . . . . . . .   11, 18

*John W. Jackson, et. al. v. Gorden E. Eden*,
No. 1:12-cv-00421 (D. N.M. March 31, 2014)
(**Exhibits Nine** and **Ten**) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

*Martin Pot, et. al. v. Colonel Stan Witt*,
No. 3:13-cv-03102 (W.D. Ark. May 8, 2014) (**Exhibit Eleven**) . . . .   12

*National Rifle Association, et. al. v. State of Washington, et. al.*,
No. C08-1613 RSM (W.D. Wash. Jan. 27, 2009) (**Exhibit Twelve**) . .   12

*Second Amendment Foundation, Inc., et. al. v. Jim Suttle, et. al.*,
No. 8:11CV335 (D. Neb. Nov. 21, 2011) (**Exhibit Seven**) . . . . . . . . .   11

## Statutes, Rules, and Other Authorities

18 U.S.C. § 922 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Haw. Rev. Stat. § 134-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12, 13,
17, 18

Haw. Rev. Stat. § 134-17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

8 C.F.R. § 316.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# I.  LEGAL BACKGROUND.

In Hawaii, Section 134-2 of the Hawaii Revised Statutes provides the only means by which any fit and qualified person may lawfully possess a firearm in their home.  Specifically, Section 134-2(a) prohibits "any person" from acquiring ownership of a firearm without first obtaining a permit from the appropriate chief of police.  Haw. Rev. Stat. § 134-2(a).  It is a crime to possess a firearm in Hawaii without the permit contemplated in Section 134-2.  Haw. Rev. Stat. § 134-17(c).

Section 134-2(d) vests Defendant Kealoha, as chief of police, with discretion to issue the permits contemplated in Section 134-2(a) to "citizens of the United States of the age of twenty-one years or more," diplomats, and alien law enforcement agents on Oahu.  Haw. Rev. Stat. § 134-2(d).  However, the chief is only vested with discretion to issue severely limited permits to other alien applicants. *Id.*   Specifically, the chief may issue a permit that would allow the alien applicant to possess shotguns or rifles for a maximum of 60 days and, then, only after the alien has obtained a hunting license.  *Id.*   The chief also has discretion to issue a permit to an alien who is training for specific sport-shooting contests for a maximum of six months.  *Id.*   The sport-shooting contest must be held during the time the permit allows the alien to possess the firearm(s).  *Id.*

## II.  FACTUAL BACKGROUND

Mr. Fotoudis is a lawfully admitted permanent resident alien who resides in Hawaii.  Decl. of Steve Fotoudis ¶¶ 2-5.  The only reason that Mr. Fotoudis is not a naturalized citizen is because he has not met the five-year residency requirement.  Decl. of Steve Fotoudis ¶ 3; *see* 8 C.F.R. § 316.2(a);  .  Mr. Fotoudis has a green card, **Exhibit One**, and a United States social security card, **Exhibit Two**.  Decl. of Steve Fotoudis ¶ 4.

Mr. Fotoudis wishes to import to Hawaii firearms that he currently owns but are located in Australia.  Decl. of Steve Fortoudis ¶¶ 21, 24, 32, 47-51.  Mr. Fortoudis is fit and qualified to keep firearms under the laws of the United States and, with the exception of the statutory discriminatory provisions prohibiting lawfully admitted aliens from acquiring firearms, under the laws of Hawaii.  Decl. of Steve Fortoudis, ¶¶ 4, 6-18, 31.  Mr. Fotoudis holds firearms licenses in Australia.  Decl. of Steve Fotoudis ¶ 8, **Exhibit Three**.  Mr. Fotoudis even received a letter of recommendation from the South Australian Police stating that he is a "fit and proper person" to keep and possess firearms and identifying several firearms licenses Mr. Fotoudis holds or has held in Australia.  Decl. of Steve Fotoudis ¶ 10,  **Exhibit Four**.

On July 10, 2014, Mr. Fotoudis went to the window at the Honolulu Police Department's ("HPD") main station on Beretania Street.  Decl. of Steve Fotoudis ¶

2

24.  The window is the designated place where members of the public may apply for permits to acquire firearms pursuant to Hawaii law.  Decl. of Steve Fotoudis ¶ 22.  United States citizens are routinely permitted to apply for Section 134-2 permits at the window and, if found fit and qualified, those citizen applicants are issued the permit.  .  Decl. of Steve Fotoudis ¶ 23.

Mr. Fotoudis was asked for identification by the police officer who was assisting people at the HPD window.  .  Decl. of Steve Fotoudis ¶ 25.  In response to the request, Mr. Fotoudis presented his green card, United States Social Security Card, and his Australian passport.  .  Decl. of Steve Fotoudis ¶ 26.  Because he was not a naturalized U.S. citizen, Mr. Fotoudis was not even allowed to apply for any permit.  .  Decl. of Steve Fotoudis ¶¶ 27, 29.

In the context of Section 134-2 permits, Defendant Louie has not taken any action to promulgate rules or otherwise ensure that resident aliens are not discriminated against.  In practice, Defendant Kealoha does not exercise even his limited statutory discretion in favor of alien applicants.  Upon information and belief, aliens are not permitted to possess firearms even in the severely limited circumstances identified in Section 134-2(d).  No inquiry has ever been made as to what type of firearm Mr. Fotoudis sought to acquire, whether Mr. Fotoudis had a hunting license, and/or whether Mr. Fotoudis was training for a sport-shooting contest.  Decl. of Steve Fotoudis ¶ 28.  In fact, Mr. Fotoudis has been specifically

3

advised by HPD representatives that he could not possess a firearm in Hawaii. Decl. of Steve Fotoudis ¶ 20, **Exhibit Five**.   And, when Mr. Fotoudis wrote Defendant Kealoha to inquire how this unconstitutional prohibition could be avoided, Chief Kealoha did not even respond.   Decl. of Steve Fotoudis ¶ 21, **Exhibit Six.**

## III.  ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008).

### A.  Mr. Fotoudis will likely succeed on the merits.

### 1.  Mr. Fotoudis' core Second Amendment rights continue to be violated.

Although the Second Amendment is not an unlimited right, the Second Amendment guarantees the right to keep and possess firearms for the purpose of self-defense. *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008).   "[T]he need for defense of self, family and property is most acute" in the home.   *Id*. at 628.   Accordingly, "a complete prohibition" of handguns and other protected arms "is invalid." *Id*. at 629.   "[T]he Due Process Clause of the Fourteenth Amendment

incorporates the Second Amendment right recognized in *Heller*." *McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020, 3050 (2010).

Nevertheless, even if Chief Kealoha routinely permitted permanent residents to apply for the limited permits contemplated by Section 134-2(d), those permits do not satisfy the Second Amendment. Despite the questions that *Heller* left unresolved and with which courts nationwide are currently struggling, *Heller* is abundantly clear that the right to possess firearms within the confines of the home for the purpose of self-defense is unequivocally protected. Section 134-2(d) does not allow permanent residents to exercise that core right.

Mr. Fotoudis does not claim that the government may not *reasonably* prohibit unfit and/or unqualified persons, fit and qualified *illegal* aliens, or fit and qualified temporary non-immigrant aliens from possessing firearms. However, the absolute prohibition on fit and qualified permanent residents' ability to keep and possess firearms within the confines of their Hawaii homes for the purpose of self-defense not only obviously burdens Second Amendment rights but also patently violates the Second Amendment. *Heller*, 554 U.S. at 580, 629. The prohibition of Section 134-2(d) fails application of any form of means-end scrutiny.

Thus, the only question before this Court is whether fit and qualified permanent residents such as Mr. Fotoudis are among "the people" protected by the Second Amendment.

5

> The Bill of Rights is a futile authority for the alien seeking admission for the first time to these shores. **But once an alien lawfully enters and resides in this country he becomes invested with the rights guaranteed by the Constitution to all people within our borders.** Such rights include those protected by the First and the Fifth Amendments and by the due process clause of the Fourteenth Amendment. **None of these provisions acknowledges any distinction between citizens and resident aliens. They extend their inalienable privileges to all 'persons' and guard against any encroachment on those rights by federal or state authority.'** *Bridges v. Wixon*, 326 U.S. 135, 161, 65 S.Ct. 1443, 1455, 89 L.Ed. 2103 (concurring opinion).

> 'The alien, to whom the United States has been traditionally hospitable, has been accorded a generous and ascending scale of rights as he increases his identity with our society. Mere lawful presence in the country creates an implied assurance of safe conduct and gives him certain rights; they become more extensive and secure when he makes preliminary declaration of intention to become a citizen, and they expand to those of full citizenship upon naturalization. During his probationary residence, this Court has steadily enlarged his right against Executive deportation except upon full and fair hearing. * * * And**, at least since 1886, we have extended to the person and property of resident aliens important constitutional guaranties—such as the due process of law of the Fourteenth Amendment.'** *Johnson v. Eisentrager*, 339 U.S. 763, 770—771, 70 S.Ct. 936, 940, 94 L.Ed. 1255.

*Kwong Hai Chew v. Colding*, 344 U.S. 590, 596, n. 5 (1953) (emphases added).

In the context of the Second Amendment, the United States Supreme Court has specifically found:

> The Second Amendment protects 'the right of the people to keep and bear Arms' . . . While this textual exegesis is by no means conclusive, it suggest that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments . . . refers to a class of persons who are part of a national community or who have otherwise

developed sufficient connection with this country to be considered part of that community.

*United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990). More specifically, "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *Id.* at 271. "But once an alien lawfully enters and resides in this country he becomes invested with the rights guaranteed by the Constitution to all people within our borders." *Id.* (citation omitted). Thus, insofar as naturalized citizens are permitted to keep and bear arms, resident aliens may do the same.

*Heller*, itself, quotes *Verdugo-Urquidez*, for the proposition that the phrase "the people" is intended to confer "individual rights" to "'a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community" instead of merely conferring the right to bear arms only upon "male, able bodied [militia members] within a certain age range." *Heller*, 554 U.S. at 580 (*quoting Verdugo-Urquidez*, 494 U.S. at 265). And, at least Massachusetts' United States District Court has squarely found that permanent residents are included amongst "the people" protected by the Second Amendment. *Fletcher v. Haas*, 851 F.Supp.2d 287, 288, 291-93, 299 (D. Mass 2012) ("This case presents the question whether lawful permanent resident aliens are among 'the people' for whom the Second

Amendment the United States Constitution provides a right to bear arms.   I conclude they are.").

Mr. Fotoudis is a permanent resident.   Mr. Fotoudis has a green card.   Mr. Fotoudis will become naturalized upon the expiration of the five-year waiting period.   And, in the meantime, Mr. Fotoudis lives and works in Honolulu.   Mr. Fotoudis has necessarily "developed sufficient connection with this country to be considered part of [the] community."   *Verdugo-Urquidez*, 494 U.S. at 265;  *See Demore*, 538 U.S. at 544 (Souter, J., concurring in part and dissenting in part) (the lives of permanent residents are "generally indistinguishable from those of United States citizens.").   Mr. Fotoudi has "accepted some societal obligations" that places him "among 'the people' of the United States," including but not limited to running a business and paying taxes in Honolulu.   *Verdugo-Urquidez*, 494 U.S. at 273.   Undoubtedly, Mr. Fotoudis has sufficient connection with the United States to exercise the core of the fundamental right guaranteed by the Second Amendment, *i.e.*, to keep a firearm(s) within the confines of his home for the purpose of self-defense.

Mr. Fotoudis is highly likely to prevail on the merits of this issue.

### 2.   Mr. Fotoudis has been denied equal protection of the laws.

Section 134-2(d) of the Hawaii Revised Statutes and Defendants' refusal to issue and/or to allow Mr. Fotoudis to apply for a permit to acquire a firearm(s) to

keep in his home for the purpose of self-defense and to use for other lawful purposes violates the equal protection clause of the Fourteenth Amendment.  Mr. Fotoudis is likely prevail on the merits of this claim.

Our Supreme Court has specifically held that "the term 'person' in this [Fourteenth Amendment] context encompasses lawfully admitted resident aliens as well as citizens of the United States and entitles both citizens and aliens to the equal protection of the laws of the State in which they reside."  *Graham v. Richardson*, 403 U.S. 365, 371 (1971) (denial of welfare benefits). "[C]lassifications based on alienage . . . are inherently suspect and subject to close judicial scrutiny."  *Id.* at 372.  And, although here the core protection of fundamental Second Amendment rights *are* at stake, the inherent suspicion and "close judicial scrutiny" is applied "whether or not a fundamental right is impaired."  *Id.* at 373.  Thus, in contrast to federal laws, "[s]tate alienage classifications create a 'suspect class' to which we apply strict scrutiny."  *United States v. Lopez-Flores*, 63 F.3d 1468, 1473 (9th Cir. 1995).

Not surprisingly, state laws that discriminate against a person based on his or her alienage have been consistently struck.  *Takahashi v. Fish & Game Commission*, 334 U.S. 410, 421 (1948) (invalidating a state law excluding "aliens who are lawful residents of the State from making a living by fishing in the ocean off its shores while permitting others to do so.").  "*Takashi* and *Graham* stand for

the broad principle that 'state regulation not congressionally sanctioned that discriminates against aliens lawfully admitted to the country is impermissible if it imposes additional burdens not contemplated by Congress.'" *Toll v. Moreno*, 458 U.S. 1, 12-13 (1982) (invalidating state law denying tuition benefits to nonimmigrant aliens).  In other words, absent specific congressional action to the contrary, lawfully admitted resident aliens, such as Mr. Fotoudis, "**are entitled to the full and equal benefit of all state laws for the security of persons and property**." *Graham*, 403 U.S. at 378 (emphasis added).

Accordingly, each court, known to the undersigned, that has reviewed the issue *sub judice* has determined that permanent residents may, at the very least, keep firearms in their homes for the purpose of self-defense and may enjoy the same rights or privileges to bear arms as naturalized citizens.  *Chan v. City of Troy*, 559 N.W.2d 374, 379-80, n. 3. (Mich.Ct.App. 1997) ("the statute, which prohibits the purchase of pistols by all noncitizens, fails to distinguish between dangerous noncitizens and those noncitizens who would pose no particular threat if allowed to purchase the weapons" and "[h]ad the statute excluded only illegal aliens, as opposed to all noncitizens, it may well have passed constitutional muster."); *People v. Nakamura*, 62 P.2d 246, 247 (Colo. 1936) ("the act wholly disarms aliens for all purposes.  The state . . . cannot disarm any class of persons or deprive them of the right . . . to bear arms in defense of home, person, and property.");

10

*Sandiford v. Commonwealth*, 225 S.E.2d 409 (Va. 1976) (invalidating presumption for possession of sawed-off shotgun by alien); *State v. Chumphol*, 634 P.2d 451 (Nev. 1981) (invalidating prohibition on possession of pistol); *People v. Rappard*, 28 Cal.App.3d 302, 304-05, 104 Cal.Rptr. 535 (1972) (invalidating prohibition on possession of concealable firearm); *Fletcher*, 851 Supp.2d 287 (determining that resident aliens are "people" as contemplated by the Second Amendment and holding that resident aliens are entitled to possess firearms); *Smith v. South Dakota*, 781 F.Supp.2d 879 (D. S.D. 2011) (permanent injunction on equal protection grounds for permanent resident who was prohibited from obtaining conceal carry permit); *Alexander Say v. John Adams, et.al.*, No. 3:07-cv-377-R, 2008 wl 718163 (D. Ky. March 14, 2008) (unreported) (Kentucky law authorizing citizens but not permanent residents to obtain licenses to carry concealed weapons violates equal protection); *Second Amendment Foundation, Inc., et. al. v. Jim Suttle, et. al.*, No. 8:11CV335 (D. Neb. Nov. 21, 2011) (stipulated preliminary injunction) (attached as **Exhibit Seven**); *Carlos Nino de Rivera Lajous v. David Sankey*, No. 4:13-cv-03070 (D. Neb. Oct. 15, 2013) (Order and Final Judgment granting permanent injunctive relief prohibiting enforcement of statute that prohibited issuance of conceal and carry permits to otherwise qualified resident aliens) (attached as **Exhibit Eight**); *John W. Jackson, et. al. v. Gorden E. Eden*, No. 1:12-cv-00421 (D. N.M. March 31, 2014) (Preliminary Injunction Order and

11

Judgment finding that prohibiting resident aliens from obtaining conceal and carry permits violates the equal protection clause and enjoining the enforcement of such prohibition) (attached as **Exhibits Nine** and **Ten**); *Martin Pot, et. al. v. Colonel Stan Witt*, No. 3:13-cv-03102 (W.D. Ark. May 8, 2014) (Order on Motion for Consent for Judgment) (attached as **Exhibit Eleven**); *National Rifle Association, et. al. v. State of Washington, et. al.*, No. C08-1613 RSM (W.D. Wash. Jan. 27, 2009) (Agreed Order Granting Plaintiffs' Motion for Preliminary Injunction) (attached as **Exhibit Twelve**).

Strict scrutiny must inevitably be applied to Hawaii's discriminatory licensing procedure. Thus, the government must carry the burden of proving that excluding lawful permanent residents who are fit and qualified to keep and possess firearms is "narrowly tailored [and] further[s] compelling governmental interests." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

Section 134-2 broadly categorizes all persons as either "citizens" or aliens. Haw. Rev. Stat. § 134-2(d). Thus, permanent residents are illegally deprived of the same rights as those to which illegal immigrants or other non-immigrant aliens who are in the United States lawfully but on a temporary visa are deprived. This broad class-based categorization is not narrow but is, instead, sweeping.

Further, the government has no compelling interest in preventing lawful permanent residents, who are no more prone to violence or likely to commit crimes

than the naturalized population, from exercising the core of fundamental Second Amendment rights.  *Fletcher*, 851 F.Supp.2d at 303 (where statute did not distinguish between dangerous or non-dangerous aliens or between permanent residents and temporary non-immigrant residents, the court found "[a]ny classification based on the assumption that lawful permanent residents are categorically dangerous and that all American citizens by contrast are trustworthy lacks even a reasonable basis."). *Sandiford*, 225 S.E.2d at 411 ("We see no rational connection between a person's place of birth and his disposition to commit offensive or aggressive acts."); *Chumphol*, 634 P.2d at 452 ( "A person does not exhibit a tendency toward crime merely because he or she is a noncitizen"); *People v. Rappard*, 28 Cal.App.3d 302, 304-05, 104 Cal.Rptr. 535 (Cal.App. 1972) ("a person does not . . . show a tendency toward crime simply because he is not a citizen of this country.").

It is unfathomable that the government would be able to justify the sweeping and discriminatory prohibition of Section 134-2(d).  Because Section 134-2(d) excludes all fit and qualified permanent residents, it is unconstitutional on its face.  Additionally, Mr. Fotoudis was not permitted to even apply for the permit because of his status as a permanent resident.  Thus, the actions described in the Complaint and above are unconstitutional as applied to Mr. Fotoudis.

Mr. Fotoudis is also highly likely to prevail on the merits of this claim.

13

### 3.  Mr. Fotoudis' Due Process Rights have been violated.

As shown above, the due process clause of the Fourteenth Amendment undeniably applies to lawfully admitted aliens.

Hawaii's permitting scheme leaves fit and qualified applicants at the mercy of the police chief's discretion to determine whether the applicant may enjoy the exercise of core Second Amendment rights.  Whether such a scheme could satisfy minimal due process guarantees of the Fourteenth Amendment is, at best, questionable.  However where, as here, an applicant is not even afforded the ability to subject himself to the dubious procedure, the applicant's due process rights have clearly been violated.  Mr. Fotoudis will also undoubtedly prevail on the merits of Count Three of his Complaint.

### B.  Mr. Fotoudis will be irreparably harmed.

"[A]n alleged constitutional infringement will often alone constitute irreparable harm." *Associated General Contractors v. Coalition for Economic Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991); *see Sammartano v. First Judicial District Court Carson City*, 303 F.3d 959, 973 (9th Cir. 2002) ("the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury' for purposes of the issuance of a preliminary injunction").  This Court should find irreparable harm solely because Mr. Fotoudis

will be deprived of his core Second Amendment rights if the injunction is not issued.

Moreover, "all constitutional provisions are of equal dignity." *Tom v. Sutten*, 533 F.2d 1101, 1106 (9th Cir. 1976).   Thus, the Ninth Circuit has found that a group of plaintiffs' "probability of success [in demonstrating irreparable harm was] much higher" after also finding that the challenged statute was unconstitutional "insofar as it classifies by ethnicity and sex." *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997).

At least one of this Court's sister districts has found, in a case where the plaintiffs showed a likelihood of success on the merits of an equal protection claim (for discrimination based on sexual orientation), that the plaintiffs had also demonstrated sufficient irreparable harm. *Collins v. Brewer*, 727 F. Supp. 2d 797, 812 (D. Ariz. 2010), *aff'd sub nom. Diaz v. Brewer*, 656 F.3d 1008 (9th Cir. 2011). Such "constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm." *Id.*

One other district court has specifically found irreparable harm in a case precisely analogous to this case. *Say*, *supra*.   There, a permanent resident demonstrated the likelihood of prevailing on an equal protection claim challenging a state firearms law.   The law discriminated against permanent aliens as does Section 134-2. *Id.*   And, the court found irreparable harm. *Id.*

15

This Court should find that Mr. Fotoudis is irreparably harmed because of the continued deprivation of his equal protection rights.

Even if these constitutional violations were somehow an insufficient demonstration of irreparable harm, the facts of this case present specific irreparable harm beyond that of the violation of his constitutional rights.

Mr. Fotoudis, who was a regular competitor at numerous Australian sport-shooting competitions, currently owns seven rifles and two handguns.  Decl. of Steve Fotoudis ¶¶ 31.  When he moved to Hawaii and because he could not get a Section 134-2 permit, Mr. Fotoudis sold the vast majority of his firearms and only retained those that he finds "irreplaceable" because of the sentimental value he attaches to those firearms.  Decl. of Steve Fotoudis ¶ 34.  Because Defendants will not even allow Mr. Fotoudis to apply for the permit that would allow him to possess his remaining firearms in Hawaii, Mr. Fotoudis is forced to keep those firearms in Australia.  Decl. of Steve Fotoudis ¶ 47.

Those firearms are now stored in a safe at Mr. Fotoudis' father's house. Decl. of Steve Fotoudis ¶ 47.  Mr. Fotoudis' father wants the safe removed from his house as soon as possible.  Decl. of Steve Fotoudis ¶ 48.  Moreover, Mr. Foutodis' Australian firearms permit expires on December 31, 2014 Decl. of Steve Fotoudis ¶ 49.  Then, Mr. Fotoudis will be forced to either sell the firearms or, alternatively, pay Australian officials an exorbitant storage fee to keep the firearms

on Mr. Fotoudis' behalf.  Decl. of Steve Fotoudis ¶ 50.   Mr. Fotoudis cannot afford to pay the fee for each of his remaining firearms.  Decl. of Steve Fotoudis ¶ 51.

The impending loss of Mr. Fotoudis' firearms also constitutes irreparable harm.

### C.  The balance of equities tips sharply in Mr. Fotoudis' favor.

In this case, "the balance of equities tips in [Mr. Fotoudis'] favor.  *Winter*, 129 S. Ct. at 374.  Being lawfully admitted for permanent residence and by having previous firearm licenses, Mr. Fotoudis has been subjected to intensive background checks.   No legitimate State interest is served:   by denying Mr. Fotoudis an opportunity to apply for a permit contemplated by Section 134-2; by denying Mr. Fotoudis a permit contemplated by Section 134-2 which would allow Mr. Fotoudis to keep his firearms in his home; and/or by applying criminal penalties against Mr. Fotoudis for not having the permit.

*Say* found that an injunction would require the state police to conduct a manual case-by-case background check on alien concealed-carry applicants, as well as update its electronic database software, amend its forms, and change its record heck procedures.  However, "any harm to others caused by the granting of a preliminary injunction is not substantial enough to justify the violation of Plaintiff's constitutional rights."  *Say*, 2008 wl 718163, *4.

*Say* enjoined enforcement of the state law requiring applicants for a concealed-carry permit to be U.S. citizens.  *Say*, *supra*.  Defendants were also ordered to furnish Say with a license application and to "accept and process the application and issue the license in accordance with the established procedures for processing such application and issuing such license, but without requiring proof of United States citizenship.  *Id*.; *see also Sankey* (**Exhibit Eight**); *Jackson*, (**Exhibits Nine** and **Ten**).

Any additional administrative burden required for Defendants to issue or renew permits to acquire to permanent resident aliens who wish to possess firearms within the confines of their home for the purpose of self-defense would not be substantial.  The balance of equities tips sharply in favor of:  enjoining the enforcement of the discriminatory provision Section 134-2(d) and/or the discriminatory practices of Defendants**;** compelling Defendants to allow Mr. Fotoudis to apply; and compelling issuance of the permit to Mr. Fotoudis absent some good faith finding that he is either unfit or unqualified.

### D.  The injunction serves the public's interests.

The injunction sought "is in the public interest."  *Winter*, 129 S.Ct. at 374.  "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Freminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).  "[I]t is always in the

18

public interest to prevent the violation of a party's constitutional rights." *Sammartano*, 303 F.3d at 974 (citation omitted).  The *Say* injunction was found to be in the public interest because "Plaintiff is asserting a violation of the Equal Protection Clause."  *Say*, 2008 wl 718163, *4.

No public interest exists in denying firearm licenses to or prohibition firearm possession by lawful permanent resident aliens.  No such discrimination exists in the federal Gun Control Act, which prohibits firearm possession only to aliens who are:  1) "illegally or unlawfully in the United States;:" or 2) "admitted to the United States under a nonimmigrant visa."  18 U.S.C. § 922(g)(5).  The latter prohibition is lifted if the alien is here "for lawful hunting or sporting purposes or is in possession of a hunting license."  18 U.S.C. § 922(y)(2)(A).

There is no public interest in prohibiting fit and qualified, lawfully admitted permanent resident aliens from exercising the core of the rights guaranteed by the Second Amendment, *i.e.*, to possess a firearm(s) in their home for the purpose of self-defense.

## IV.  CONCLUSION

Mr. Fotoudis has strong, if not inevitable, likelihood of prevailing on the merits of his facial and as applied challenges to Section 134-2(d) of the Hawaii Revised Statutes.  Mr. Fotoudis will suffer irreparable harm in the absence of the

relief requested.   The balance of equities tips in his favor and the requested injunction is in the public interest.  The motion(s) should be granted.

DATED:  Honolulu, Hawaii; July 24, 2014.


*s/Richard L. Holcomb*____
Richard L. Holcomb
Attorney for Plaintiff
Steve Fotoudis