# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Steven Fotoudis,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>City and County of Honolulu;<br>Lois Kealoha, in his individual capacity;<br>and, David Louie, Attorney General of<br>Hawii in his individual and official<br>capacity; John Does 1-50 in their<br>individual or official capacities.<br><br>　　　　　Defendants. | CASE NO. 1:14-CV-00333<br><br><br>**DECLARATION OF STEVEN<br>FOTOUDIS** |

## DECLARATION OF STEVEN FOTOUDIS

1.　My name is Steven Fotoudis.  I am the Plaintiff in the above-styled case.

2.　I am from Australia.  I am an Australian citizen.  However, I have immigrated to the United States.

3.　I am in the process of becoming a citizen here.  I have taken all necessary steps to become a citizen of the United States.  The only requirement that I have not met in becoming a fully naturalized citizen is that I have not lived in the United States continuously for five years.

4.　In approximately September of 20011, I disclosed to the American Embassy in Sidney an Australian police clearance, a criminal history, fingerprints and photo identification to assist the United States authorities in conducting the

1

background investigation that was necessary for me to become a permanent resident.   In May 2012, I was granted permanent residency in the United States.   I successfully underwent a thorough background investigation before I was granted permanent residency in the United States.   Currently, I am lawfully admitted to the United States as a permanent resident alien.   I have a green card, a true and exact copy of my green card is attached as **Exhibit One**.   I have a United States social security card, a true and exact copy of my social security card is attached as **Exhibit Two**.

5.     My wife and I have lived in Honolulu, Hawaii since May 5, 2013.   I am the Hawaii state sales manager for Wash Multi-family Laundry Systems.   I pay all applicable local, state and United States taxes.   I have no plans of leaving Hawaii or the United States.

6.     In Australia, I was a competitive shooter.   I have participated in a number of competitive shooting contests, including globally recognized ISSF (International Shooting Sport Federation) contests and IPSC (International Practical Shooting Confederation) contests.   I was an active member of a competitive shooting club, Torrens Valley Pistol Club ("TVPC") in Australia from 2002 to 2013.   I served as club captain, range officer, instructor and committee member during my membership with TVPC.

7.    I have had extensive training in firearms safety and use.  I have completed a recognized Australian range officer's course where I learned safe way to empty guns and clear a range as well as scoring.  I passed the Australian government's test that permitted me to become licensed for the ownership of long arms.  I also completed a six week training course where I learned the safe handling, legalities, range rules, and basic shooting skills.  That training allowed me to obtain a license to own firearms in Autstralia.

8.    I hold an Australian firearms license.  A true and exact copy of my Australian firearms license is attached as **Exhibit Three**.

9.    In order to obtain the Australian firearms license, I had to undergo an extensive investigation into my background.  I also had to demonstrate my fitness and qualifications.

10.    On February 8, 2012, Sergeant D. Gibson with the South Australian Police wrote a letter on my behalf.   A true an exact copy of the letter is attached as **Exhibit Four**.  The letter correctly states that I am a "fit and proper person" to hold a firearms license.  And, it identifies several firearms licenses I hold or have held in Australia.

11.    I have never been convicted of a crime.

12.    I am not a fugitive.

13.    I have no mental illnesses or defects.

3

14.   I do not and never had any restraining order issued against me.

15.   I have never committed domestic or any other act of violence.

16.   I am not and have never been addicted to mind-altering substances and I do not use illegal mind-altering substances.

17.   I am not addicted to nor do I use alcohol in excess.

18.   I believe that I am fit and qualified to possess a firearm pursuant to the laws of the United States and of Hawaii (with the exception of the discriminatory provisions that exclude resident aliens from acquiring firearms in Hawaii).

19.   The only reason that has ever been provided to me as to why I could not lawfully possess firearms in Hawaii is that I am disqualified from obtaining a permit pursuant to Section 134-2 of the Hawaii Revised Statutes because I am not yet a fully naturalized citizen.

20.   On December 6, 2011, I received an e-mail from Sergeant D. Paperd of the Honolulu Police Department's Firearms Unit.  The e-mail states, in relevant part:

> You may bring firearms into the State, you must register them within 72 hours of your arrival.  However [sic] Hawaii State law requires you to be a U.S. citizen with a U.S. passport or Naturalization certificate.

A true and exact copy of the e-mail is attached as **Exhibit Five**.

4

21.   On February 21, 2012, I wrote Defendant Lois Kealoha a letter inquiring as to how I could possess my firearms in Hawaii. A true and exact copy of my letter to Defendant Kealoha is attached as **Exhibit Six**. I received no response to this inquiry.

22.   At the HPD's main station on Beretania (and Alapai) Street, there is a window where the public may obtain forms from HPD representatives and apply for firearms permits. During designated hours, the window is open to the public.

23.   It is my understanding United States citizens are routinely permitted to obtain and/or submit applications at the window at HPD's main station. While I was at the HPD station, I saw others applying and/or submitting applications. It is also my understanding that if the citizen applicant is found to be fit and qualified pursuant to Hawaii law, the citizen applicant is issued a permit as contemplated by Section 134-2 of the Hawaii Revised Statutes.

24.   On July 10, 2014 at approximately 1:00 p.m., I went to the window at the Honolulu Police Department. I informed the HPD representative that I wished to apply for a permit to acquire a firearm.

25.   When I informed the HPD representative (who I believe to be Officer "Prado") that I wished to apply for a permit to acquire, Officer Prado requested identification from me.

26.   I supplied Officer Prado with my green card, my social security card, and my Australian passport.

27.   Officer Prado and/or another officer standing at the adjacent window told me that I could not apply for the permit because I am not a citizen of the United States.

28.   Neither officer inquired as to whether I had a hunting license or was training for a sport-shooting contest.

29.   I was not permitted to apply for the permit to acquire a firearm

30.   Without the permit, it is my understanding that I am unable to acquire or possess a firearm in Hawaii for self-defense or any other lawful purpose.  In fact, it is my understanding that to do so would be a crime.

31.   I have safely and lawfully possessed a number of firearms in Australia for years.

32.   I wish to possess operational firearms and ammunition in my Hawaii home for the purpose of self-defense.  I also wish to possess firearms that I may use to train for and participate in sport-shooting competitions.

33.   I currently own seven rifles and two handguns.

34.   Before I moved to Hawaii, I sold the vast majority of my firearms and only retained those that I find "irreplaceable" because of the sentimental value I attach to those firearms.

47.   Because I cannot apply for a permit under Hawaii law, I have to keep those firearms in Australia.  Those firearms are now stored in a safe at my father's house.

48.   My father wants the safe removed from his house as soon as possible.

49.   My Australian firearms permit expires on December 31, 2014, at which time my firearms must be removed from my father's house.

50.   Upon the expiration of the Australian permit, I can no longer own the firearms in Australia.  I will be forced to either sell the firearms or, alternatively, pay Australian officials an exorbitant storage fee to keep the firearms on my behalf.  Based on my experience as a Australian club captain, I had to deal with Australian gun stores to make purchases for new members.  Based on this experience, I know the storage fees to be approximately $100 AUD per month or approximately $107 USD.

51.   I cannot afford to pay the storage fee for each of my remaining firearms and will likely be forced to sell some if not all of my "irreplaceable" firearms.

I, Steven Fotoudis, do declare under penalty of law that the fore-going is true and correct to the best of my knowledge.

DATED:  Honolulu, Hawaii, July 24, 2014.

Steven Fotoudis