# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**JOHN W. JACKSON and SECOND
AMENDMENT FOUNDATION,
INC.,**

        Plaintiffs,

        vs.                           **No. 2:12-CV-00421-MCA-RHS**

**GARY KING,** *in his Official Capacity
as Attorney General of the State of New
Mexico***, and BILL HUBBARD,** *in his
Official Capacity as Director of the
Special Investigations Division of the
New Mexico Department of Public
Safety,*

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Plaintiffs' Motion for Preliminary Injunction*. [Doc. 18]  The Court conducted oral argument on Plaintiffs' motion on December 18, 2012. [Doc. 27] Having considered the submissions, the relevant case law, and otherwise being fully advised in the premises, the Court grants Plaintiffs' motion.

## I.    BACKGROUND

On April 24, 2012, Plaintiffs John W. Jackson and the Second Amendment Foundation, Inc. (SAF), filed their *Complaint* [Doc. 1] "pursuant to 42 U.S.C. § 1983 for deprivation of civil rights under color of law, [seeking] equitable, declaratory, and injunctive relief challenging the State of New Mexico's prohibition on otherwise

qualified non-U.S. citizens who legally reside in New Mexico from obtaining a concealed carry permit, pursuant to section NMSA 1978, § 29-19-4(A)(1) of the New Mexico Concealed Handgun Carry Act." [Doc. 1 at 1] Plaintiffs allege that the citizenship requirement in Section 29-19-4(A)(1) violates the equal protection clause of the United States Constitution, the right to keep and bear firearms in the Second Amendment to the United States Constitution, and is preempted by federal immigration law. [Doc. 1 at 6-7]

On May 17, 2012, Defendants Gary King, Attorney General of the State of New Mexico, and Bill Hubbard, Director of the Special Investigations Division of the New Mexico Department of Public Safety, filed their Answer to Plaintiffs' Complaint. [Doc. 10] In their Answer Defendants admitted that "legal resident aliens are prohibited from carrying concealed weapons" and that "only citizens may carry concealed weapons." [Doc. 10 at 2]

On August 9, 2012, Plaintiffs filed *Plaintiffs' Motion for Preliminary Injunction*. [Doc. 18] In support of their motion, Plaintiffs submitted the Declaration of John W. Jackson, who averred that he is a permanent legal resident of the United States residing in Rio Rancho, Sandoval County, New Mexico, and that he is "prohibited by NMSA 1978, § 29-19-4A(1) from obtaining a concealed carry permit, and thus carrying a handgun in a concealed manner for self-defense." [Doc. 19] Plaintiffs also submitted the Declaration of Julianne Versnel, who is the Director of Operations of SAF. Ms. Versnel averred that SAF has "individual members and supporters who are adversely impacted by NMSA 1978, § 29-19-14(A)(1)" and that "[b]ut for criminal enactments challenged in this

2

complaint, SAF members who are legal aliens residing within New Mexico would obtain concealed carry permits and carry concealed firearms for their own defense." [Doc. 19] Plaintiffs contend that they are entitled to preliminary injunctive relief because "[t]he deprivations of constitutional rights subject Plaintiffs to irreparable harm, and is such a clear-cut constitutionally-inflicted harm that Plaintiffs are likely to succeed on the merits by the conclusion of this litigation." [Doc. 19 at 6] Plaintiffs further contend that the balance of the equities and the public interest would be served by awarding them the preliminary injunctive relief that they seek.

Defendants do not dispute that permanent resident aliens "are entitled to Second Amendment rights under the equal protection clause of the Fourteenth Amendment." [Doc. 20 at 4] Defendants contend, however, that no Second Amendment rights are at issue in this case because "the concealed carry of a firearm is not a constitutional right." [Id.] Defendants point out that Plaintiffs are free to carry firearms openly and to carry concealed firearms in their own home, on their own property, and in their own vehicle. Because there is no constitutional violation, Defendants argue that Plaintiffs' motion for a preliminary injunction should be denied.

On September 19, 2012, the Court held a telephonic status conference regarding Plaintiffs' motion. At the status conference, the parties agreed that an evidentiary hearing was unnecessary, but requested oral argument. [Doc. 25] Oral argument on Plaintiffs' motion was held on Tuesday, December 18, 2012. [Doc. 27]

Following oral argument, Defendant King moved to dismiss Plaintiffs' *Complaint*

for failure to state a claim upon which relief can be granted and for lack of standing, alleging that he is not responsible for the execution and administration of the Concealed Handgun Carry Act, NMSA 1978, § 29-19-1, *et seq.* and, therefore, Plaintiffs injuries are not traceable to him, nor redressable by him.  [Doc. 28] The Court agreed and granted Defendant King's motion to dismiss. [Doc. 41]  Accordingly, Defendant King is no longer a party to this case.

## II.  <u>STANDARD</u>

The decision to grant a preliminary injunction is within the Court's discretion.  <u>See Winnebago Tribe of Nebraska v. Stovall</u>, 341 F.3d 1202, 1205 (10th Cir. 2003). "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  <u>Greater Yellowstone Coal. v. Flowers</u>, 321 F.3d 1250, 1256 (10th Cir. 2003).  "To obtain a preliminary injunction, the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest."  <u>Attorney Gen. of Oklahoma v. Tyson Foods, Inc.</u>, 565 F.3d 769, 776 (10th Cir. 2009) (internal quotation marks and citation omitted). "Generally, where the moving party has established that the [latter] three harm factors tip decidedly in its favor, the probability of success requirement is somewhat relaxed and the movant need only show questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation."  <u>Nova Health Sys. v. Edmondson</u>, 460 F.3d 1295, 1298 n.6 (10th Cir.

2006) (internal quotation marks and citations omitted).  However, this relaxed standard

does not apply to the "three types of disfavored injunctions," which are:

> (1) preliminary injunctions that alter the status quo; (2) mandatory
> preliminary injunctions; and (3) preliminary injunctions that afford the
> movant all the relief that it could recover at the conclusion of a full trial on
> the merits. When a preliminary injunction falls into one of these categories,
> it must be more closely scrutinized to assure that the exigencies of the case
> support the granting of a remedy that is extraordinary even in the normal
> course. A district court may not grant a preliminary injunction unless the
> moving party makes a strong showing both with regard to the likelihood of
> success on the merits and with regard to the balance of harms.

Awad v. Ziriax, 670 F.3d 1111, 1125 (10th Cir. 2012) (internal quotation marks and

citation omitted).

Plaintiffs contend that the relaxed standard is applicable to this case because the

"latter three elements weigh heavily in its favor." [Doc. 19 at 10 (internal quotation marks

and citation omitted)].  However, in Nova Health Systems, the Tenth Circuit Court of

Appeals held that "where . . . the plaintiff seeks to enjoin the enforcement of a statute, a

showing that the questions are 'fair ground for litigation' is not enough; the plaintiff must

meet the traditional 'substantial likelihood of success' standard."  460 F.3d at 1298 n.6;

see also Heideman v. South Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003)

("[w]here ... a preliminary injunction 'seeks to stay governmental action taken in the

public interest pursuant to a statutory or regulatory scheme,' the less rigorous

fair-ground-for-litigation standard should not be applied." (internal quotation marks and

citation omitted)).  Accordingly, the Court concludes that the relaxed standard is

inapplicable to this case.

Defendant Hubbard contends that Plaintiffs seek a disfavored injunction and, therefore, the heightened standard must be applied. [Doc. 20 at 3] The status quo is defined as

> the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing. In determining the status quo for preliminary injunctions, [the Tenth Circuit] looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights.

Schrier v. Univ. Of Colorado, 427 F.3d 1253, 1260 (10th Cir. 2005) (internal quotation marks and citations omitted). In Nova Health Systems, the Court expressed no opinion as to whether a preliminary injunction seeking to enjoin the enforcement of a statute would alter the status quo and, therefore, be a disfavored injunction subject to the heightened standard of review. 460 F.3d at 1298 n.5.

The District of Kansas addressed this issue, however, in American Civil Liberties Union of Kansas and Western Missouri v. Praeger, 815 F.Supp.2d 1204 (D. Kan. 2011). In that case, the plaintiff sought "declaratory and injunctive relief to halt the enforcement of a Kansas statute which took effect on July 1, 2011." Id. at 1207. The Court held that, because the statute was newly enacted, the "last uncontested status between the parties before the dispute arose would be that which existed prior to the challenged statute taking effect." Id. at 1208. In arriving at this conclusion, the Court relied on the concurrence in O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 977 (10th Cir. 2004), which noted that "[w]hen a statute is newly enacted, and its enforcement will restrict rights citizens previously had exercised and enjoyed, it is not uncommon for

6

district courts to enjoin enforcement pending a determination of the merits of the constitutional issue."  Conversely, "[w]hen a statute has long been on the books and enforced, . . . it is exceedingly unusual for a litigant who challenges its constitutionality to obtain (or even to seek) a preliminary injunction against its continued enforcement."  Id. Because the statute at issue in Praeger was newly enacted, the Court concluded that "the heightened standard for injunctions that alter the status quo [did] not apply to plaintiff's request for a preliminary injunction."  Praeger, 815 F.Supp.2d at 1209.

The citizenship requirement in New Mexico's Concealed Handgun Carry Act is not newly enacted–it has been a part of the statutory scheme since its enactment in 2003. See 2003 New Mexico Laws Ch. 255 (S.B. 23).  Because the citizenship requirement "has long been on the books and enforced," O Centro Espirita Beneficiente Uniao Do Vegetal, 389 F.3d at 977, the Court concludes that the requested relief seeks to alter the status quo. Cf. American Ass'n of People With Disabilities v. Herrera, 580 F.Supp.2d 1195, 1247 (D. N.M. 2008) (denying the plaintiff's request for a preliminary injunction enjoining the enforcement of New Mexico's voter-registration laws in relevant part because it would "upset the status quo that has existed for three years").  Accordingly, the heightened standard of review applicable to disfavored injunctions applies to Plaintiffs' motion for a preliminary injunction.

## III.    DISCUSSION

It is undisputed that Plaintiffs may openly carry a loaded firearm in accordance with Article II, Section 6 of the New Mexico Constitution.  See N.M. Const. art. II, § 6

("No law shall abridge the right of the citizen to keep and bear arms for security and defense, for lawful hunting and recreational use and for other lawful purposes, but nothing herein shall be held to permit the carrying of concealed weapons. No municipality or county shall regulate, in any way, an incident of the right to keep and bear arms."). However, New Mexico's Concealed Handgun Carry Act does not permit non-United States citizens to carry a loaded concealed firearm. Specifically, Section 29-19-4 provides, in relevant part, as follows:

> A. The department shall issue a concealed handgun license to an applicant who:
> (1) is a citizen of the United States;
> (2) is a resident of New Mexico or is a member of the armed forces whose permanent duty station is located in New Mexico or is a dependent of such a member;
> (3) is twenty-one years of age or older;
> (4) is not a fugitive from justice;
> (5) has not been convicted of a felony in New Mexico or in any other state or pursuant to the laws of the United States or any other jurisdiction;
> (6) is not currently under indictment for a felony criminal offense in New Mexico or any other state or pursuant to the laws of the United States or any other jurisdiction;
> (7) is not otherwise prohibited by federal law or the law of any other jurisdiction from purchasing or possessing firearms;
> (8) has not been adjudicated mentally incompetent or committed to a mental institution;
> (9) is not addicted to alcohol or controlled substances; and
> (10) has satisfactorily completed a firearms training course approved by the department for the category and the largest caliber of handgun that the applicant wants to be licensed to carry as a concealed handgun.

Although noncitizens cannot obtain a concealed handgun license, they may nonetheless carry a concealed loaded firearm in the following limited circumstances:

8

(1)    in the persons's residence or on real property belonging to him as owner, lessee, or licensee;
(2)    in a private automobile or other private means of conveyance, for lawful protection of the person's or another's person or property.

NMSA 1978, § 30-7-2.  In any other circumstance, carrying a loaded concealed firearm without a "valid concealed handgun license issued . . . by the department of public safety pursuant to the provisions of the Concealed Handgun Carry Act" is a petty misdemeanor."  Id.

A.    *Second Amendment*

Plaintiffs contend that the citizenship requirement in New Mexico's Concealed Handgun Carry Act violates their fundamental right to keep and bear arms under the Second Amendment to the United States Constitution.  Defendant Hubbard responds that there is no fundamental right to carry a concealed firearm under the Second Amendment.

The Second Amendment provides as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  This provision is "fully applicable to the States."  McDonald v. City of Chicago, 130 S. Ct. 3020, 3026 (2010) (citations omitted).

In District of Columbia v. Heller, 554 U.S. 570, 592 (2008), the United States Supreme Court held that the Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation."  However, the Court cautioned that "the right [is] not a right to keep and carry any weapon whatsoever, in any manner whatsoever and for whatever purpose."  Id. at 626.  "For example, the majority of 19[th]-

9

century courts to consider the question held that prohibitions on carrying concealed

weapons were lawful under the Second Amendment or state analogues." Id.  Although

the Court did "not undertake an exhaustive historical analysis . . . of the full scope of the

Second Amendment," the Court stated that nothing in its opinion "should be taken to cast

doubt on longstanding prohibitions on the possession of firearms by felons and the

mentally ill, or laws forbidding the carrying of firearms in sensitive places such as

schools and government buildings, or law imposing conditions and qualifications on the

commercial sale of arms." Id. at 626-27.

After examining the history and text of the Second Amendment, the Heller Court

held that the District of Columbia's total ban on handgun possession in the home was

unconstitutional.  The Court reasoned that:

> the inherent right of self-defense has been central to the Second
> Amendment right.  The handgun ban amounts to a prohibition on an entire
> class of "arms" that is overwhelmingly chosen by American society for that
> lawful purpose.  The prohibition extends, moreover, to the home, where the
> need for defense of self, family, and property is most acute.  Under any of
> the standards of scrutiny that we have applied to enumerated constitutional
> rights, banning from the home "the most preferred firearm in the nation to
> 'keep' and use for protection of one's home and family,' . . . would fail
> constitutional muster.

Id. at 628-29 (citation omitted)

Following Heller, the Tenth Circuit Court of Appeals adopted "a two-pronged

approach to Second Amendment challenges."  United States v. Reese, 627 F.3d 792, 800

(10th Cir. 2010) (internal quotation marks and citation omitted); see also Peterson v.

Martinez, 707 F.3d 1197, (10th Cir. 2013).

> Under this approach, a reviewing court first ask[s] whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. If it does not, [the court's] inquiry is complete. If it does, [the court] must evaluate the law under some form of means-end scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid.

Reese, 627 F.3d at 800 (alterations in original) (internal quotation marks and citations omitted).

Defendant Hubbard concedes that permanent resident aliens have a Second Amendment right to keep and bear arms for self-defense.  [Doc. 20 at 4] See United States v. Huitron-Guizar, 678 F.3d 1164, 1169 (10th Cir. 2012) (assuming, without deciding, that the Second Amendment "right of the people" includes "at least some aliens unlawfully here"); see also Fletcher v. Haas, 851 F. Supp. 2d 287, 301 (D. Mass. 2012) (finding "no justification for refusing to extend the Second Amendment to lawful permanent residents").  Defendant Hubbard contends, however, that the Second Amendment right does not encompass the right to keep and bear *concealed* firearms.

In Peterson, the Tenth Circuit Court of Appeals addressed the issue of whether the Second Amendment protects the right to keep and bear concealed firearms.  In that case, the plaintiff challenged a Colorado statute that required Colorado residency for the issuance of a concealed carry permit.  However, the statute did "not affect the ability of non-residents to openly carry firearms in the state."[1]  Id. at 1209.  The Court noted that, in

---

[1]The Court noted that a municipal ordinance in the Denver Revised Municipal Code prohibited "individuals from carrying firearms–concealed or not–unless the individuals holds a valid [concealed handgun license] or 'is carrying the weapon concealed within a private

11

Robertson v. Baldwin, 165 U.S. 275, 281-82 (1897), the United States Supreme Court stated that "the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons." Although this statement was "plainly obiter dicta" the Court noted that it was "'bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements.'" Peterson, 707 F.3d at 1210 (quoting United States v. Serawop, 505 F.3d 1112, 1122 (10th Cir. 2007). Although not recent, "the Supreme Court's contemporary Second Amendment jurisprudence does nothing to enfeeble–but rather strengthens–the statement that concealed carry restrictions do not infringe the Second Amendment right to keep and bear arms." Id.

The Court observed that "[t]here can be little doubt that bans on the concealed carrying of firearms are longstanding." Id. Indeed, in Heller, the Supreme Court held that "[g]iven this lengthy history of regulation, restrictions on concealed carry qualify as 'longstanding' and thus 'presumptively lawful regulatory measures.'" Id. at 1211 (quoting Heller, 554 U.S. at 626 & n.26). In light of Robertson and Heller, the Court concluded that the plaintiff's "Second Amendment claim fails at step one of our two-step analysis: the Second Amendment does not confer a right to carry concealed weapons." Id.

---

automobile or other private means of conveyance, for hunting or for lawful protection of such person's or another person's person or property, while traveling.'" Peterson, 707 F.3d at 1202 (quoting Denver Rev. Mun. Code § 38-117(a), (b) & (f)). However, the plaintiff did not challenge the constitutionality of the municipal ordinance and, therefore, the Court did not address it. Id. at 1208-09.

Pursuant to Peterson, the Second Amendment does not confer a right to carry concealed weapons. Accordingly, Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of their Second Amendment claim.

B.     *Equal Protection*

Alternatively, Plaintiffs contend that New Mexico's Concealed Handgun Carry Act violates the Equal Protection Clause of the Fourteenth Amendment because it discriminates on the basis of alienage. Plaintiffs further contend that the citizenship requirement cannot survive strict scrutiny because it is not narrowly tailored to further a compelling government interest. Defendant Hubbard responds that the Act does not violate the Equal Protection Clause because "[t]here is no constitutional right at issue here." [Doc. 20 at 5] Defendant Hubbard further contends that strict scrutiny is inapplicable to this case because the regulation of concealed firearms rests "firmly within a State's constitutional prerogative" and does not impact economic rights. [Id.]

1.     *Substantial Likelihood of Success on the Merits*

The Equal Protection Clause of the Fourteenth Amendment provides as follows: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Equal protection "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Governmental classifications are subject to strict scrutiny under the Equal Protection Clause if they burden a fundamental right or target a suspect class. Save Palisade FruitLands v. Todd, 279 F.3d 1204, 1210 (10th Cir. 2002). "To

13

survive strict scrutiny, the government must show that its classification is narrowly tailored to achieve a compelling government interest." KT.& G Corp v. Attorney General of State of Okla., 535 F.3d 1114, 1137 (10th Cir. 2008).

Although New Mexico's Concealed Handgun Carry Act does not burden a fundamental right, it nonetheless may be subject to strict scrutiny if it targets a suspect class. See 16B Am. Jur. 2d Constitutional Law § 834 ("The plaintiff need not prove that another fundamental right was trampled, as the right to equal protection of the laws is itself fundamental . . ."). Alienage is a suspect classification and state statutes that discriminate on the basis of alienage are subject to strict scrutiny. See Graham v. Richardson, 403 U.S. 365, 371-72 (1971) (holding that "classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny. Aliens as a class are a prime example of a 'discrete and insular' minority . . . for whom such heightened judicial solicitude is appropriate") (citation and footnotes omitted); Soskin v. Reinertson, 353 F.3d 1242, 1254 (10th Cir. 2004) (recognizing that "Supreme Court precedents establish . . . [that] states on their own cannot treat aliens differently from citizens without a compelling justification"). New Mexico's Concealed Handgun Carry Act discriminates on the basis of alienage and, therefore, strict scrutiny is the applicable standard. Indeed, in Huitron-Guizar, the Tenth Circuit Court of Appeals recognized that, under the Equal Protection Clause, state laws regulating the possession of firearms that discriminate against permanent resident aliens must survive strict scrutiny. 678 F.3d at 1170 ("Recently some state statutes that burden gun possession by lawful

14

permanent aliens . . . have been declared invalid under the Equal Protection Clause, which requires that strict scrutiny be applied to state laws that impose restrictions based on alienage.").

Defendant Hubbard contends, however, that pursuant to <u>Sugarman v. Dougall</u>, 413 U.S. 634, 648 (1973), the Court's scrutiny should "not be so demanding" because the concealed carrying of a firearm is a matter "resting firmly within a State's constitutional prerogative." The Court disagrees. In <u>Sugarman</u>, the plaintiffs, who were federally registered aliens, challenged a New York statute that restricted civil service to United States citizens. <u>Id.</u> at 635-36. Applying strict scrutiny, the United States Supreme Court held that the indiscriminate citizenship requirement in the civil service law violated the Equal Protection Clause of the United States Constitution. <u>Id.</u> at 643. In arriving at its conclusion, the Court recognized that the State may "in an appropriately defined class of positions, require citizenship as qualification for office." <u>Id.</u> at 647. "Such power inheres in the State by virtue of its obligation . . . to preserve the basic conception of a political community." <u>Id.</u> (Internal quotation marks and citations omitted.). Although "such state action, particularly with respect to voter qualifications is not wholly immune from scrutiny under the Equal Protection Clause," the Court noted that its "scrutiny will not be so demanding where we deal with matters resting firmly within a State's constitutional prerogatives." <u>Id.</u> at 648. The Court explained as follows:

> This is no more than a recognition of a State's historical power to exclude
> aliens from participation in its democratic political institutions . . . and a
> recognition of a State's constitutional responsibility for the establishment

15

and operation of its own government, as well as the qualification of an appropriately designated class of public office holders. . . This Court has never held that aliens have a constitutional right to vote or to hold high public office under the Equal Protection Clause.  Indeed, implicit in many of this Court's voting rights decisions is the notion that citizenship is a permissible criterion for limiting such rights. . . . A restriction on the employment of noncitizens, narrowly confined, could have particular relevance to this important state responsibility, for alienage itself is a factor that reasonably could be employed in defining political community.

Id. (Internal quotation marks and citations omitted).

New Mexico's Concealed Handgun Carry Act does not seek to preserve the basic conceptions of a state political community.  See Chan v. City of Troy, 559 N.W. 2d 374, 376 (Mich. App. 1997) (per curiam) (applying strict scrutiny to Michigan's concealed handgun statute because "[t]he purchase or possession of a pistol clearly is not a function bound up with the operation of a State as a governmental entity, nor does it otherwise involve the implementation of the sovereign powers of a state" (internal quotation marks and citations omitted)).  Nor does the Act affect the State's constitutional responsibility for the establishment and operation of its own government or the qualification of its voters or a designated class of public office holders.  Therefore, the Court concludes that the Act does not pertain to "matters resting firmly within the State's constitutional prerogative," as defined by Sugarman.

Alternatively, Defendant Hubbard contends that strict scrutiny is inapplicable because New Mexico's Concealed Handgun Carry Act does not deprive aliens of an economic benefit. [Doc. 20 at 5]  Defendant Hubbard fails to cite any case law indicating that strict scrutiny is only applicable to state economic legislation that discriminates on

the basis of alienage.  In the seminal case of <u>City of Cleburne</u>, the United States Supreme Court observed that strict scrutiny is the appropriate standard to be used when "*social or economic legislation*" discriminates on the basis of alienage.  473 U.S. at 440 (emphasis added).  Indeed, courts typically apply strict scrutiny to state social legislation, such as New Mexico's Concealed Handgun Carry Act, that restricts the possession of concealed firearms on the basis of alienage.  <u>See, e.g.</u>,<u>Smith v. South Dakota</u>, 781 F. Supp. 2d 879, 884 (D. S.D. 2011); <u>State v. Ibrahim</u>, 269 P.3d 292, 296-97  (Wa. App. 2011); <u>People v. Bounasri</u>, 31 Misc. 3d 304, 2011 WL 356059, at * 2 (N.Y. City Ct. 2011).

Applying the strict scrutiny test, Defendant Hubbard contends that the state of New Mexico has a compelling interest in protecting "the public from concealed carry of firearms because of the inherent danger that unregulated concealed weapons pose to the public."  [Doc. 20 at 7] As the Second Circuit Court of Appeals recognized in <u>Kachalsky v. County of Westchester</u>, 701 F.3d 81, 97 (2d Cir. 2012), the states have a "substantial, indeed compelling, government interest[] in public safety and crime prevention."  <u>See also Fletcher</u>, 851 F. Supp. 2d at 303 (recognizing that Massachusetts "has an interest in regulating firearms to prevent dangerous persons from obtaining firearms").  The Court therefore agrees with Defendant Hubbard that the state has a compelling interest in protecting the public from concealed firearms.  The question remains, however, whether the citizenship requirement is narrowly tailored to serve this interest.

"The purpose of the narrow tailoring requirement is to ensure that 'the means chosen "fit" th[e] compelling goal so closely that there is little or no possibility that the

motive for the classification was illegitimate . . . prejudice or stereotype.'" Grutter v. Bollinger, 539 U.S. 306, 333 (2003) (quoting Richmond v. J.A. Croson Co., 488 U.S. 469, 493 (1989) (plurality opinion)). Defendant Hubbard has failed to demonstrate a close fit between the means chosen and the state's compelling interest. There is no argument made, much less any evidence proffered, that a permanent resident alien, such as Mr. Jackson, who resides in this country legally, poses a greater danger by virtue of his or her status alone, when carrying a concealed loaded firearm, than do United States citizens. Indeed, "[a]ny classification which treats all aliens as dangerous and all United States citizens as trustworthy rests upon a very questionable basis." People v. Rappard, 28 Cal. App. 3d 302, 305 (Cal. Ct. App. 1972); see also Fletcher, 851 F.Supp.2d at 303 ("Any classification based on the assumption that lawful permanent residents are categorically dangerous and that all American citizens by contrast are trustworthy lacks even a reasonable basis."). For this reason, various courts have concluded that state laws, like New Mexico's Concealed Handgun Carry Act, which impose an indiscriminate ban precluding all legal resident aliens from carrying concealed firearms violate the Equal Protection Clause of the United States Constitution. See, e.g., Smith v. South Dakota, 781 F. Supp. 2d 879, 886 (2011); Rappard, 28 Cal. App. 3d at 305; State v. Chumphol, 634 P.2d 451, 452 (Nev. 1981); Bounasri, 2011 WL 356059, at *3; Chan, 559 N.W. 2d at 376; Ibrahim, 269 P.3d at 296-97.

During oral argument before this Court, Defendant Hubbard argued for the first time that the citizenship requirement is narrowly tailored to further the state's compelling

interest in public safety because a non-citizen's immigration status is subject to change at the will of the federal government, without notice to the state. The Court is not persuaded by this argument. The Concealed Handgun Carry Act prohibits *all* non-citizens, regardless of their immigration status, from obtaining a concealed carry permit. The Act does not attempt to distinguish between lawful permanent residents, such as Plaintiff Jackson, and illegal aliens. Moreover, the Act does not attempt to distinguish between non-citizens whose immigration status changes during the course of the application process and permit holding period and those whose immigration status does not. Thus, the citizenship requirement is overinclusive; it encompasses a large number of non-citizens who, by virtue of their status alone, pose no greater risk of harm to public safety. Because Defendant Hubbard has failed to demonstrate a close fit between the citizenship requirement and the state's compelling interest in public safety, the Court concludes that Plaintiffs have made a strong showing of a substantial likelihood of success on the merits of their Equal Protection claim.

2.      *Irreparable Harm*

As previously explained, Plaintiffs have made a strong showing that the citizenship requirement in New Mexico's Concealed Handgun Carry Act violates the Equal Protection Clause. "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed.1995)); see also Heideman,

348 F.3d at 1189-90 (holding that the plaintiffs had established irreparable harm because the statute at issue deprived them of their First Amendment Rights). Plaintiffs' constitutional injury cannot be adequately redressed by post-trial relief and, therefore, the Court concludes that they will suffer irreparable harm in the absence of preliminary injunctive relief.

### 3.    Balance of the Harms

Because Plaintiffs seek a disfavored injunction, they must make a strong showing that the balance of the harms supports the issuance of preliminary injunctive relief. As previously explained, Plaintiffs have demonstrated that the continued enforcement of the citizenship requirement in New Mexico's Concealed Handgun Carry Act violates their right to equal protection of the laws and constitutes an irreparable harm. Thus, the harm to Plaintiffs is significant. In contrast, the harm to Defendant Hubbard is minimal. Although Defendant Hubbard may incur some administrative costs if he is forced to grant concealed carry permits to noncitizens that must later be revoked after a full trial on the merits,[2] these costs pale in comparison to the deprivation of Plaintiffs' constitutional rights. Accordingly, the Court concludes that the balance of the harms factor supports the issuance of preliminary injunctive relief.

### 4.    Public Interest

---

[2]Defendant Hubbard also argues that the public welfare and safety will be put at risk if concealed carry permits are issued to noncitizens. [Doc. 20 at 11] This arguments is rejected because, as previously explained, Defendant Hubbard has failed to establish that permanent resident aliens such as Mr. Jackson pose a greater risk of danger, by virtue of their status alone, than citizens with respect to the carrying of concealed firearms.

Defendant Hubbard does "not have an interest in enforcing a law that is likely constitutionally infirm." <u>Chamber of Commerce of the United States v. Edmondson</u>, 594 F.3d 742, 771 (10th Cir. 2010). Additionally, "it is always in the public interest to prevent the violation of a party's constitutional rights." <u>Awad</u>, 670 F.3d at 1132 (internal quotation marks and citation omitted); <u>see also Chamber of Commerce of the United States</u>, 594 F.3d at 771 (holding that "the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law." (internal quotation marks and citation omitted)). The public interest is served by granting Plaintiffs' request for preliminary injunctive relief.

<u>C.</u>       <u>Severability</u>

"[A] court sustaining an equal protection challenge has 'two remedial alternatives: it may either declare the statute a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion.'" <u>Petrella v. Brownback</u>, 697 F.3d 1285, 1296 (10th Cir. 2012) (quoting <u>Heckler v. Mathews</u>, 465 U.S. 728, 738 (1984)). "In order to determine whether partial invalidation of a state statute is appropriate, federal courts look to state law." <u>Citizens for Responsible Gov't State Political Action Comm. v. Davidson</u>, 236 F.3d 1174, 1195 (10th Cir. 2000); <u>see Leavitt v. Jane L.</u>, 518 U.S. 137, 139 (1996) ("Severability is of course a matter of state law.") (per curiam).

> It is well established in [New Mexico] that a part of a law may be invalid and the remainder valid, where the invalid part may be separated from the other portions, without impairing the force and effect of the remaining

21

parts, and if the legislative purpose as expressed in the valid portion can be given force and effect, without the invalid part, and, when considering the entire act it cannot be said that the legislature would not have passed the remaining part if it had known that the objectionable part was invalid.

Bradbury & Stamm Const. Co. v. Bureau of Revenue, 372 P.2d 808, 811 (N.M. 1962).

However, the Court "cannot rewrite or add language to a statute in order to make it constitutional." State v. Frawley, 172 P.3d 144, 155 (N.M. 2007).

The Court concludes that the citizenship requirement in subsection (1) of section 29-19-4(A) may be severed without impairing the remainder of the Act's force and effect. If subsection (1) is removed, the statute nonetheless provides for the issuance of a concealed carry permit to an applicant who satisfies the remainder of the statutory requirements, subsections (2) through (10). Because the severance of subsection (1) "in no way affects the enforceability of the other portions of the statute," Bradbury & Stamm Const. Co., 372 P.2d at 814, the first prong of the severability test is satisfied.

Additionally, severance of the citizenship provision will not impair the legislative purpose as expressed in the remainder of the Act. The manifest purpose of the Act is to permit the issuance of "concealed handgun licenses to qualified members of the public who satisfy the requisite education and training." New Mexico Voices for Children v. Denko, 90 P.3d 458, 459 (N.M. 2004). Severance of the citizenship provision will not impair this purpose, nor will it require the issuance of concealed carry permits to illegal aliens. Section 29-19-4(A)(7) of the Act prohibits the issuance of concealed carry permits to applicants who are "otherwise prohibited from federal law or the law of any other

22

jurisdiction from purchasing or possessing firearms."  Title 18 of the United States Code, Section 922(g)(5) prohibits any person who "is illegally or unlawfully in the United States" from "ship[ping] or transport[ing] in interstate or foreign commerce, or possess[ing] in or affecting commerce, any firearm or ammunition; or [receiving] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  See Huitron-Guizar, 678 F.3d at 1170 (10th Cir. 2012) (upholding the constitutionality of Section 922(g)(5)).  Because illegal aliens are prohibited from purchasing or possessing firearms under federal law, they are not eligible to obtain a concealed carry permit under the Concealed Handgun Carry Act.  Accordingly, the second prong of the severability test weighs in favor of severance.

The foregoing analysis is also dispositive of the third prong of the severance test, namely, whether the legislature would have passed the Act if it had known that the citizenship provision was unconstitutional.  "Because the Legislature did not articulate a specific purpose in the Act, we look to the entire Act to ascertain whether the Legislature would have passed the Act if it had known that" the citizenship provision was unconstitutional.  Baca v. New Mexico Dep't of Public Safety, 47 P.3d 441, 445 (N.M. 2002) (per curiam).  As previously explained, severance of the citizenship provision preserves the legislative purpose of the Act and does not require the issuance of concealed carry permits to illegal aliens.  Considering the Act as a whole, the Court concludes that the Legislature would have passed the Act if it had known that the citizenship provision was unconstitutional.

For the foregoing reasons, the Court concludes that the proper remedy for the alleged Equal Protection violation is to sever the citizenship provision in Section 29-19-14(A)(1) from the remainder of the Concealed Handgun Carry Act.

## IV.    CONCLUSION

The Court, applying the heightened standard applicable to disfavored injunctions, finds that Plaintiffs have satisfied each of the requirements for obtaining preliminary injunctive relief.

Defendant Hubbard has failed to establish that a legal permanent resident alien such as Mr. Jackson poses a greater risk of danger by virtue of his or her status alone, than do citizens, with respect to the carrying of concealed weapons.

The Court further concludes that the citizenship provision in Section 29-19-14(A)(1) is severable from the remainder of the Concealed Handgun Carry Act.

**IT IS THEREFORE HEREBY ORDERED** that *Plaintiffs' Motion for Preliminary Injunction* is **GRANTED** and Defendant Hubbard is preliminarily enjoined from enforcing the citizenship provision in Section 29-19-14(A)(1) of the Concealed Handgun Carry Act pending resolution of this action.

**SO ORDERED** this 30th day of March, 2013 in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
Chief United States District Judge