IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STEVE FOTOUDIS, | ) | CIV. NO. 14-00333 JMS-RLP |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING PLAINTIFF'S |
| | ) | MOTION FOR SUMMARY |
| vs. | ) | JUDGMENT AND FOR PERMANENT |
| | ) | INJUNCTIVE RELIEF |
| CITY AND COUNTY OF | ) | |
| HONOLULU; LOUIS KEALOHA, | ) | |
| CHIEF OF THE HONOLULU | ) | |
| POLICE DEPARTMENT IN HIS | ) | |
| OFFICIAL CAPACITY; DAVID | ) | |
| LOUIE, ATTORNEY GENERAL OF | ) | |
| HAWAII, IN HIS OFFICIAL | ) | |
| CAPACITY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND FOR PERMANENT INJUNCTIVE RELIEF

## I.  INTRODUCTION

Plaintiff Steve Fotoudis ("Plaintiff" or "Fotoudis") moves for

summary judgment and for permanent injunctive relief in this action challenging

the constitutionality of certain provisions of Hawaii Revised Statutes ("HRS")

§ 134-2(d) regarding applications for a permit to acquire firearms.  Under 42

U.S.C. § 1983, Fotoudis seeks an order: (1) finding violations of constitutional

rights, and (2) permanently enjoining Defendants the City and County of Honolulu

(the "City"), Louis Kealoha (in his official capacity as Chief of the Honolulu Police Department) ("Kealoha"), and David Louie (in his official capacity as Attorney General of the State of Hawaii) ("Louie") (collectively, "Defendants") from refusing to allow Fotoudis (and other lawful permanent residents) to apply for permits to acquire firearms under HRS § 134-2(d).  Based on the following, the Motion is GRANTED.

## II.  BACKGROUND

### A.    Factual Background

#### 1.    The Parties

Fotoudis is a permanent resident of the United States, living in Honolulu, Hawaii.  Doc. No. 26, Verified First Amended Complaint ("FAC") ¶ 8. According to the FAC, [b]efore moving to Hawaii, [Fotoudis] was a competitive shooter in Australia.  [He] was an active member in a club of competitive shooters, has had extensive training in firearms use and safety, and has safely and lawfully possessed a number of firearms in Australia for many years."  *Id.* ¶ 23.

The City is a municipal corporation, incorporated under the laws of the State of Hawaii.  *Id.* ¶ 9.  Kealoha, Chief of the Honolulu Police Department, is "sued in his official capacity as a City official and/or employee who supervised, oversaw, and/or participated in the violation of  Mr. Fotoudis' rights" as alleged in

2

the FAC; and is "responsible for developing and/or enforcing the City and

[State's] policies, customs, or practices" at issue. *Id.* ¶ 10.  Similarly, Louie, as

"chief legal officer and chief law enforcement officer for the State of Hawaii . . . is

tasked by Hawaii law to comply with, enforce, and/or defend the laws at issue."

*Id.* ¶ 11.

### 2.     *The Dispute*

The parties have stipulated to the following facts, which the court

considers to be proven for purposes of this action.[1]  *See, e.g.*, *United States v.*

*Houston*, 547 F.2d 104, 107 (9th Cir. 1976) ("Stipulations as to material facts . . .

will be deemed to have been conclusively established.").

a.  Plaintiff is a lawfully admitted permanent resident of the United

States who at all material times has resided in the City and County of Honolulu.

Doc. No. 27, Stip. Facts ¶ 1.

b.  Plaintiff holds a Form I-551 green card as well as a United States

Social Security Administration Card.  *Id.* ¶ 2.

---

[1]  The FAC alleges other salient details such as Plaintiff's background, the process by which he was not allowed to apply for a permit to acquire firearms, the status of his existing firearms in Australia, and the issuance of a corresponding Australian firearms permit.  *See* Doc. No. 26, FAC at pp. 5-10.  The court need not, however, resolve whether all the factual allegations in the FAC have been established.  For purposes of this Order, the stipulated facts are sufficient to demonstrate that Plaintiff has standing to make an as-applied challenge to HRS § 134-2(d), and that he is entitled to a permanent injunction allowing him to submit an application to acquire firearms, subject to the same conditions and requirements as a United States citizen.

c.  Plaintiff intends to become a naturalized citizen of the United

States.  *Id.* ¶ 3.

d.  Plaintiff desires to possess an operational firearm or firearms and

ammunition for lawful purposes, including in his home for self-defense.  *Id.* ¶ 4.

e.  On July 10, 2014, Plaintiff went to the Honolulu Police

Department and attempted to apply for a permit to acquire a firearm.  *Id.* ¶ 5.

f.  Plaintiff was not allowed to apply for a permit to acquire a firearm

because he is not yet a citizen of the United States.  *Id.* ¶ 6.

g.  HRS § 134-2(d) states in pertinent part that, with limited

exceptions that are inapplicable to Plaintiff, the chiefs of police of the counties in

Hawaii may only issue permits to acquire firearms to citizens of the United States.

*Id.* ¶ 7.[2]

---

[2] Section 134-2(d) provides in full:

> The chief of police of the respective counties may issue permits to
> acquire firearms to citizens of the United States of the age of
> twenty-one years or more, or duly accredited official
> representatives of foreign nations, or duly commissioned law
> enforcement officers of the State who are aliens; provided that any
> law enforcement officer who is the owner of a firearm and who is
> an alien shall transfer ownership of the firearm within forty-eight
> hours after termination of employment from a law enforcement
> agency.  The chief of police of each county may issue permits to
> aliens of the age of eighteen years or more for use of rifles and
> shotguns for a period not exceeding sixty days, upon a showing
> that the alien has first procured a hunting license under chapter

(continued...)

**B.      Procedural Background**

Plaintiff filed this action on July 24, 2014, seeking a temporary restraining order ("TRO") and preliminary injunction.  *See* Doc. Nos. 1 (Verified Compl.), 5 (Motion for TRO), 6 (Motion for Preliminary Injunction).  After a July 30, 2014 status conference with the court, the parties agreed to certain relief that rendered moot the Motions for TRO and preliminary injuction.  The parties also jointly requested that "the court determine the constitutionality of [HRS] § 134-2(d)" based on stipulated facts without further briefing or argument.  *See* Doc. No. 24, Aug. 5, 2014 ltr. at 2.

Based on subsequent agreement, on August 22, 2014, Plaintiff filed the FAC, Stipulated Facts, as well as the current Motion for Summary Judgment and for Permanent Injunctive Relief.  Doc. Nos. 26, 27, 29.  On August 29, 2014,

---

[2](...continued)

> 183D, part II.  The chief of police of each county may issue permits to aliens of the age of twenty-one years or more for use of firearms for a period not exceeding six months, upon a showing that the alien is in training for a specific organized sport-shooting contest to be held within the permit period.  The attorney general shall adopt rules, pursuant to chapter 91, as to what constitutes sufficient evidence that an alien is in training for a sport-shooting contest.  Notwithstanding any provision of the law to the contrary and upon joint application, the chief of police may issue permits to acquire firearms jointly to spouses who otherwise qualify to obtain permits under this section.

*Id.*  HRS Chapter 134, governing "Firearms, Ammunition and Dangerous Weapons," does not define the term "alien."

Louie filed an Opposition, and the City filed a statement taking no position regarding the Motion.  Doc. Nos. 31, 32.  Stipulated proposed language as to the scope of an injunction was provided to the court on August 29, 2014, and during a September 16, 2014 status conference the parties agreed to modify that language. *See* Doc. Nos. 34-36.  The court determines the matter under Local Rule 7.2(d) without a hearing.

### III.  <u>STANDARDS OF REVIEW</u>

**A.     Summary Judgment**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

7

B.     **Permanent Injunction**

"To be entitled to a permanent injunction, a plaintiff must

demonstrate: (1) actual success on the merits; (2) that it has suffered an irreparable

injury; (3) that remedies available at law are inadequate; (4) that the balance of

hardships justify a remedy in equity; and (5) that the public interest would not be

disserved by a permanent injunction." *Indep. Training & Apprenticeship Program*

*v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013) (citing *eBay*

*Inc. v. MercExch., LLC*, 547 U.S. 388, 391 (2006)); *see also W. Watersheds*

*Project v. Abbey*, 719 F.3d 1035, 1054 (9th Cir. 2013).

# IV.   <u>ANALYSIS</u>

A.     **Equal Protection**

The undisputed facts establish that Fotoudis, as a lawful permanent

resident alien of the United States (and resident of Hawaii), was denied the

opportunity to apply for a permit to acquire firearms solely because of his

alienage.[3]   This classification violates the equal protection clause of the U.S.

Constitution.   HRS § 134-2(d) is thus unconstitutional as-applied to Fotoudis (and

other lawful permanent resident aliens), and Defendants are therefore permanently

_____

[3]   "The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."   8 U.S.C. § 1101(20).

8

enjoined from denying Fotoudis the opportunity (1) to apply for a permit to acquire firearms, and (2) to obtain such a permit, if he otherwise meets the qualifications of state law, as specifically set forth in the Conclusion of this Order.[4]

Under HRS § 134-2(d), the "chief of police of the respective counties may issue permits to acquire firearms to citizens of the United States of the age of twenty-one years or more," and not to "aliens" (unless the aliens are "duly

---

[4] The FAC, among other relief, seeks a declaration "that the citizenship requirements contained in Section 134-2(d) of the Hawaii Revised Statutes are unconstitutional." Doc. No. 26, FAC ¶ 80. To be clear, the court is *not* concluding that HRS § 134-2(d) is facially unconstitutional. A facial challenge requires "establish[ing] that no set of circumstances exists under which the [challenged statute] would be valid," *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)), or that the statute "lacks any 'plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 472 (2010) (citation omitted). Although § 134-2(d) uses the term "alien," it does not distinguish between lawful permanent resident aliens -- such as Plaintiff -- and illegal or temporary aliens. That is, § 134-2(d) may well satisfy constitutional scrutiny as to some types of aliens such that the court cannot conclude that "no set of circumstances exist under which" the statute would be valid. *See, e.g.*, *Fletcher v. Haas*, 851 F. Supp. 2d 287, 291 n.7 (D. Mass. 2012) (distinguishing a facial and as-applied challenge by a lawful permanent resident to a Massachusetts firearm regulation because "the regime could be constitutionally applied to an illegal alien or a lawfully admitted alien who does not establish residence in Massachusetts"); *Smith v. South Dakota*, 781 F. Supp. 2d 879, 883 (D. S.D. 2011) (rejecting a facial challenge by a lawful permanent resident to a South Dakota firearms statute because it "could be constitutionally applied if the applicant were an illegal alien").

Indeed, many courts have rejected Second Amendment and equal protection challenges by illegal aliens to alien-in-possession statutes. *See, e.g.*, *United States v. Huitron-Guizar*, 678 F.3d 1164, 1167-69 (10th Cir. 2012) (rejecting challenge to 18 U.S.C. § 922(g)(5)(A), which prohibits illegal aliens from shipping, transporting, possessing, or receiving any firearm or ammunition in interstate or foreign commerce). This Order, however, concerns only lawful permanent resident aliens such as Plaintiff, and the court has drawn no conclusions as to whether rights of any other types of aliens are implicated by § 134-2(d).

commissioned law enforcement officers of the State"). Permits may also be issued (1) to "aliens of the age of eighteen years or more for use of rifles and shotguns for a period not exceeding sixty days" if they have a hunting license, or (2) to "aliens of the age of twenty-one years" for a period not to exceed six months if they are "in training for a specific organized sport-shooting contest to be held within the permit period." *Id.* But the exceptions for aliens do not apply to Fotoudis. Section 134-2(d) is thus not "facially neutral legislation." *See Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 484 (1982) ("[W]hen facially neutral legislation is subjected to equal protection attack, an inquiry into intent is necessary[.]"). Rather, the statute explicitly treats "aliens" differently than U.S. citizens solely because of their status as "aliens."

Classifications based on alienage are "suspect" for purposes of analyzing a violation of the Equal Protection clause, and are subject to "strict judicial scrutiny whether or not a fundamental right is impaired." *Graham v. Richardson*, 403 U.S. 365, 372, 376 (1971); *see also, e.g.*, *Nyquist v. Mauclet*, 432 U.S. 1, 7 (1977) ("[C]lassifications by a State that are based on alienage are 'inherently suspect and subject to close judicial scrutiny.'"); *Smith v. South Dakota*, 781 F. Supp. 2d 879, 886 (D. S.D. 2011) (granting motion for preliminary and permanent injunction by lawful permanent resident against enforcement of

South Dakota citizenship requirement for state permit to carry concealed weapon, concluding that "the strict scrutiny standard, not the rational basis standard, applies with regard to Smith's as applied equal protection claim because the statute classifies on the basis of a suspect class"). "In order to withstand strict scrutiny, the law must advance a compelling state interest by the least restrictive means available." *Bernal v. Fainter*, 467 U.S. 216, 219 (1984) (holding that a Texas statute requiring a notary public be a U.S. citizen did not withstand strict scrutiny, violating the equal protection clause).

Applying strict scrutiny and assuming that Hawaii has a sufficient general interest in requiring permits to acquire firearms, denying Fotoudis the opportunity to apply for (and to obtain) a permit merely because he is a lawful permanent resident and not a U.S. citizen "is not a narrowly tailored means of achieving that goal." *Smith*, 781 F. Supp. 2d at 886 (citing *Application of Griffiths*, 413 U.S. 717, 725 (1973) (rejecting the argument that 'the possibility that some resident aliens are unsuited to the practice of law' could be a 'justification for a wholesale ban'")). *See also Fletcher v. Haas*, 851 F. Supp. 2d 287, 303 (D. Mass. 2012) ("Although Massachusetts has an interest in regulating firearms to prevent dangerous persons from obtaining firearms . . . the statute here fails to distinguish between dangerous non-citizens and those non-citizens who

11

would pose no particular threat if allowed to possess handguns."); *Say v. Adams*, 2008 WL 718163, at *3 (W.D. Ky. Mar. 14, 2008) (granting an injunction against enforcing a Kentucky law limiting the issuance of a license to carry concealed weapons to U.S. citizens, reasoning in part that "[a] blanket prohibition discriminating against aliens is not precisely draw[n] to achieve the goal of facilitating firearms purchases when there exists a nondiscriminatory way to achieve the same goals").

Accordingly, Fotoudis has succeeded in proving a violation of equal protection -- he was denied an opportunity to apply for a permit to acquire firearms based solely on his status as a lawful permanent resident alien.

**B.     Second Amendment**[5]

Similarly, interpreting § 134-2(d) to deny Fotoudis the opportunity to apply for (and to obtain, if otherwise qualified) a permit to acquire firearms, solely because he is not a U.S. citizen, also violates the Second Amendment.[6]

---

[5] Given the court's conclusion regarding a violation of equal protection, Plaintiff is entitled to an injunction regardless of whether the Second Amendment has also been violated. Nevertheless, the court proceeds to address the Second Amendment, given that no Circuit court has addressed this precise equal protection issue, and the many contexts in which aliens have made equal protection challenges. *See Korab v. Fink*, 748 F.3d 875, 889 (9th Cir. 2014) (Bybee, J., concurring) (observing that "the *Graham* doctrine -- while ostensibly clear when issued -- has been, in fact, riddled with exceptions and caveats that make consistent judicial review of alienage classifications difficult"), *petition for cert. filed* (U.S. Sept. 9, 2014) (No. 14-281).

[6] The Second Amendment is applicable to the States under the Fourteenth Amendment.
(continued...)

Lawful permanent residents such as Fotoudis "are firmly on the path to full citizenship," and "are entitled to a wide array of constitutional rights." *Fletcher*, 851 F. Supp. 2d at 299 (citations omitted). They are "a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community," *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990), such that they are "among 'the people' of the United States," *id.* at 273, for purposes of the Second Amendment. *See also District of Columbia v. Heller*, 554 U.S. 570, 580 (2008) (observing that the "provisions of the Constitution that mention 'the people' . . . refers to all members of the political community, not an unspecified subset") (citing *Verdugo-Urquidez*, 494 U.S. at 265).

*Heller* held that the Second Amendment confers "an individual right to keep and bear arms," 554 U.S. at 595, at least "for the purpose of immediate self-defense." *Id.* at 636. But *Heller* "expressly left for 'future evaluation' the precise level of scrutiny to be applied to laws trenching upon Second Amendment rights." *United States v. Booker*, 644 F.3d 12, 22 (1st Cir. 2011) (citing *Heller*,

---

[6](...continued)
*See McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010) (holding that "the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*"). The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of *the people* to keep and bear Arms, shall not be infringed." U.S. Const. amend. II (emphasis added).

554 U.S. at 626, 634-35); *see also Nordyke v. King*, 681 F.3d 1041, 1045 (9th Cir.

2012) (en banc) (affirming a dismissal of a Second Amendment claim because

"[Plaintiffs] cannot succeed, no matter what form of scrutiny applies to Second

Amendment claims"); *id.* at 1045 (O'Scannlain, J., concurring) (disagreeing with

"the majority's approach, which fails to explain the standard of scrutiny under

which it evaluates the ordinance").

      Nevertheless, HRS § 134-2(d), as applied to Fotoudis fails to "pass

constitutional muster regardless of whether intermediate scrutiny or strict scrutiny

applies." *Fletcher*, 851 F. Supp. 2d at 303. *See United States v. Chester*, 628 F.3d

673, 683 (4th Cir. 2010) (applying intermediate scrutiny -- "substantially related to

an important government objective"-- to a Second Amendment challenge); *United

States v. Reese*, 627 F.3d 792, 800-02 (10th Cir. 2010) (observing that *Heller*

"indicated only that the rational basis test is not appropriate" and that "we must

apply some level of heightened scrutiny").

      Here, assuming § 134-2(d)'s general permit requirement implements

an "important government objective" (intermediate scrutiny) or a "compelling

state interest" (strict scrutiny), it is neither "substantially related" nor "narrowly

tailored" to such interests.  It categorically excludes (as applied in this case) lawful

permanent resident aliens, regardless of whether they are otherwise qualified to

acquire firearms, and regardless of whether they might pose a threat to others. And "[a]ny classification based on the assumption that lawful permanent residents are categorically dangerous and that all American citizens by contrast are trustworthy lacks even a reasonable basis." *Fletcher*, 851 F. Supp. 2d at 303; *see also Say*, 2008 WL 718163, at *3 ("A blanket prohibition discriminating against aliens is not precisely draw[n] to achieve the goal of facilitating firearms purchases when there exists a nondiscriminatory way to achieve the same goals.").

## C.    Permanent Injunction

It follows that Fotoudis is entitled to a permanent injunction prohibiting Defendants from denying him the opportunity to apply for a permit to acquire firearms, and (if he otherwise qualifies) to obtain such a permit.

He has demonstrated "actual success on the merits." *Indep. Training & Apprenticeship Program*, 730 F.3d at 1032. He has also suffered "an irreparable injury" -- he has been deprived of a constitutionally-protected right. *See, e.g.*, *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (reiterating that "an alleged constitutional infringement will often alone constitute irreparable harm") (citation omitted); *Ariz. Dream Act Coalition v. Brewer*, --- F.3d ----, 2014 WL 3029759, at *11 (9th Cir. July 7, 2014) (upholding finding of likelihood of irreparable harm upon violation of equal protection, and stating that

15

"[i]rreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages") (citation omitted).  Fotoudis has also demonstrated the other requirements for issuance of a permanent injunction.  "[I]t is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available."  *Ariz. Dream Act Coalition*, 2014 WL 3029759, at *12 (quoting *Valle del Sol*, 732 F.3d at 1029).  "[T]he public interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights."  *Id*. (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

## V.  <u>CONCLUSION</u>

Plaintiff's Motion for Summary Judgment and for Permanent Injunctive Relief, Doc. No. 29, is GRANTED.[7]

Defendants and/or their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of this injunction, are enjoined from precluding lawful permanent resident aliens

---

[7]  The precise scope of the injunction was agreed to by the parties.  *See* Doc. Nos. 34-36. That is, although Defendants have opposed, or taken no position, on the Motion, all parties have agreed to the scope of this injunction (if the court concludes, as it does, that HRS § 134-2(d) is unconstitutional as-applied to Fotoudis and other lawful permanent resident aliens).

residing in the State of Hawaii from applying for a permit to acquire firearms as

set forth in HRS § 134-2(d).  Defendants must also:

(a) allow Fotoudis to apply for a permit pursuant to and consistent

with all requirements set forth in HRS § 134-2;

(b) evaluate in the normal course, with no more or less scrutiny than

would be applied to a citizen applicant, Fotoudis' application and background to

determine his fitness and qualifications to acquire firearms lawfully; and,

(c) insofar as Fotoudis is determined to be fit and qualified to acquire

firearms, to thereafter issue in the normal course to Fotoudis the permit

contemplated by HRS § 134-2, vesting Fotoudis with the same rights and

privileges to acquire firearms as those of United States citizens who obtain

permit(s) pursuant to § 134-2.

///

///

///

///

///

///

///

17

Accordingly, the Clerk of Court shall issue judgment in favor of Plaintiff, and close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 17, 2014



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Fotoudis v. City & Cnty. of Honolulu, et al.*, Civ. No. 14-00333 JMS-RLP, Order Granting Plaintiff's Motion for Summary Judgment and for Permanent Injunctive Relief