**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| STEVE FOTOUDIS,<br><br>                    Plaintiff,<br>     vs.<br><br>CITY AND COUNTY OF<br>HONOLULU;<br><br>LOUIS KEALOHA, in his official<br>capacity; and<br><br>DAVID LOUIE, in his official<br>capacity,<br><br>                    Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:14-cv-00333 JMS-RLP<br><br><br>MEMORANDUM IN SUPPORT OF<br>MOTION FOR ATTORNEYS' FEES |

**MEMORANDUM IN SUPPORT OF**
**<u>MOTION FOR ATTORNEYS' FEES</u>**

## TABLE OF CONTENTS

A.   **Statement of Facts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

B.   **Procedural Background** . . . . . . . . . . . . . . . . . . . . . . . . . .   1

C.   **Mr. Fotoudis is the prevailing party.** . . . . . . . . . . . . . . . . .   3

D.   **The Lodestar Method justifies the requested fee.** . . . . . . . .   4

E.   **This Court should award a fair hourly rate.** . . . . . . . . . . .   6

F.   *Johnson/Kerr* **Factors** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

G.   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

## TABLE OF AUTHORITIES

**Reported Cases**:

*Buckhammon Bd. & Care Home, Inc. v.*
*W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001) . . . . . .   3

*Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986) . . . .   9

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) . . . . . . . . . . . . . . .   4

*Davis v. City & Cnty. of San Francisco,*
976 F.2d 1536 (9th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Dennis v. Chang*, 611 F.2d 1302 (9th Cir. 1980) . . . . . . . . . . . . . . .   5

*Doe v. Keala*, 361 F.Supp.2d 1171 (D. Haw. 2005) . . . . . . . . . . . . .   17

*Farrar v. Hobby*, 506 U.S. 103 (1992) . . . . . . . . . . . . . . . . . . . . . . .   3

*Gates v. Deukmijian*, 987 F.2d 1392 (9th Cir. 1992) . . . . . . . . . . . . .   17

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . .   3, 4

*Interfaith Community Organization v.*
*Honeywell International, Inc.,* 426 F.3d 694 (3rd Cir. 2005) . . . . . . . 21

*Jordan v. Multnomah County*, 815 F.2d 1258 (9th Cir. 1987) . . . . . . 6

*Kay v. Ehrier,* 499 U.S. 432 (1991) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kerr v. Quinn,* 692 F.2d 875 (2nd Cir. 1982) . . . . . . . . . . . . . . . . . .10

*McGrath v. Cty. Of Nevada*, 67 F.3d 248 (9th Cir. 1995) . . . . . . . . . . 4

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) . . . . . . 5

*Prison Legal News v. Schwartznegger*, 608 F.3d 446 (9th Cir. 2010) . 22

*Robinson v. Plourde*, 717 F.Supp.2d 1092 (D.Haw. 2010) . . . . . . . . . 9

*Solomon v. City of Gainesville,* 763 F.2d 1212 (11th Cir.1985) . . . . . . 8

*World Triathalon Corp. v. Dunbar*,
539 F. Supp. 2d 1270 (D. Haw. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 13

**<u>Unreported Cases</u>**: (Attached in Appendix)

*Aloha Airlines, Inc. v. Mesa Air Grp., Inc.*,
07-00007 DAEKSC, 2007 WL 2320672 (D. Haw. Aug. 10, 2007) . . . 8

*Angel v. Capital Research Grp., Inc.*,
CIV 10-00364 HG/KSC,
2012 wl 2563168 (D. Haw. June 28, 2012) . . . . . . . . . . . . . . . . . . . 14-15

*Au v. The Funding Group, Inc.,*
No. CV 11–00541 SOM–KSC,
2013 WL 1187919 (D.Haw. Mar. 21, 2013) . . . . . . . . . . . . . . . . . . . 20

*B.T. ex rel. M.T. v. Dep't of Educ., Hawaii*,
CIV. 10-00754 JMS, 2011 WL 3022042 (D. Haw. July 21, 2011) . . . 16

*Bandalan v. Castle & Cooke Resorts, LLC*,

CIV 07-00591 DAE-LEK,
2009 WL 1955328 (D. Haw. June 30, 2009) . . . . . . . . . . . . . . . . . .   15


*Barnes v. AT $ T Pension Benefit Plan – Nonbargained Program*,
C-08-4508 EMC, 2013 WL 3870291 (N.D.Cal. July 26, 2013) . . . . . . 7

*Berry v. Hawiian Exp. Serv., Inc.*,
03-00385 SOMLEK,
2006 WL 4102120 (D. Haw. Oct. 25, 2006) . . . . . . . . . . . . . . . . . .   14

*Black v. City, Cnty. Of Honolulu*,
CV 07-00299 DAE-LEK,
2010 wl 653026 (D.Haw. Feb. 22, 2010) . . . . . . . . . . . . . . . . . . . . . .   10, 11, 15

*Blake v. Nishimura*, CIV 08-00281 LEK,
2008 wl 4754858 (D. Haw.) . . . . . . . . . . . . . . . . . . . . . . . . . . .   . . . . 12, 15

*Boles v. Engle*, CIV 08-00438 ACK-KSC,
2009 WL 1035065 (D. Haw. Mar. 12, 2009) . . . . . . . . . . . . . . . . . .   11

*C.Y. ex rel. Cheryl Y. v. Dep't of Educ., Hawai'i*,
CIV. 11-00335 JMS, 2011 WL 7102572 (D. Haw. Dec. 29, 2011) . . . 16

*D.C. v. Dep't of Educ.*, CIV.07-00362 ACK-KSC,
2008 WL 2884657 (D. Haw. May 28, 2008) . . . . . . . . . . . . . . . . . .   13

*Dep't of Educ. Hawai''i v. C.B. ex rel. Donna B.*,
CIV. 11-00576 SOM, 2012 WL 7475406 (D. Haw. Sept. 28, 2012) . . 15

*Donkerbrook v. Title Guar. Escrow Servs., Inc.*,
Civ No. 10–00616 LEK–RLP, 2011 WL 3649539,
(D.Hawai'i Aug.18, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

*Frankl v. HGH Corp.*, CIV. 10-00014 JMS,
2012 WL 1755423 (D. Haw. Apr. 23, 2012) . . . . . . . . . . . . . . . . . .   22

*Goray v. Unifund CCR Partners*,
CIV. 06-00214 HG-LEK,
2008 WL 2404551 (D. Haw. June 13, 2008) . . . . . . . . . . . . . . . . . .   12

*Harris v. Trash Man, LLC*,
CIV. 12-00169 HG-KSC,
2013 WL 1932715 (D. Haw. Apr. 16, 2013) . . . . . . . . . . . . . . . . . . .   7, 8, 19

*Hawaii Disability Rights Center, et. al. v. State of Hawaii*,
Civ. No. 03-00524 HG-KSC (D.Haw. 2005) . . . . . . . . . . . . . . . . . .   17

*I.T. ex rel. Renee T. v. Dep't of Educ., Hawaii*,
CIV. 11-00676 LEK, 2012 WL 6969333 (D. Haw. Nov. 30, 2012) . . .9, 16, 17

*Ireijo v. Agnew*, CIV. 07-00290JMS/LEK,
2007 WL 4633328 (D. Haw. Sept. 26, 2007) . . . . . . . . . . . . . . . . . .   13

*Ko Olina Dev., LLC v. Centex Homes*,
CIV. 09-00272DAE-LEK,
2010 WL 447451 (D. Haw. Feb. 9, 2010) . . . . . . . . . . . . . . . . . . . . .   10, 15

*Kuroiwa v. Lingle*, CIV 08-00153 JMS-KSC,
2008 wl 4483772 (D. Haw. Sept. 29, 2009) . . . . . . . . . . . . . . . . . .   12

*Mabson v. Ass'n of Apartment Owners of Maui Kamaole*,
CV 06-00235 DAELEK,
2008 WL 2061529 (D. Haw. Feb. 26, 2008) . . . . . . . . . . . . . . . . . .   13

*Nat'l Comm'n for Certification of Crane Operators
 v. Ventula*, CIV.09-00104SOM-LEK,
2010 WL 2179505 (D. Haw. Apr. 30, 2010) . . . . . . . . . . . . . . . . . .   6-7, 10

*Olson v. Lui*, CIV. 10-00691 ACK,
2012 WL 3686682 (D. Haw. Aug. 27, 2012) . . . . . . . . . . . . . . . . .   8

*Onishi v. Redline Recovery Servs., LLC*,
CIV. 10-00259, 2010 WL 5128723 (D. Haw. Nov. 12, 2010) . . . . . . . 7

*Paramount Pictures Corp. v. Carroll*,
CV 05-00260 ACKLEK,
2006 WL 1990815 (D. Haw. July 13, 2006) . . . . . . . . . . . . . . . . . . .14

*Parr v. JS & W Hawai'i, Inc.*,
CIV 06-00041 JMS-LEK,
2006 WL 2850097 (D. Haw. Oct. 2, 2006) . . . . . . . . . . . . . . . . . . .   14

*Ramos v. Murakami*, CV 06-00126 HG-LEK,
2006 WL 3248376 (D. Haw. Nov. 6, 2006) . . . . . . . . . . . . . . . . . . .   13

*Sakaria v. FMS Inv. Corp.*,
CIV. 08-00330 SOMLEK,
2009 WL 1322356 (D. Haw. May 12, 2009) . . . . . . . . . . . . . . . . . . .   11

*Sam K. v. Dep't of Educ., Hawaii*,
CV 12-00355 ACK-BMK, 2013 WL 1856069
(D. Haw. Apr. 30, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Seo Jeong Won v. England*, CIV.07-00606 JMS LEK,
2008 WL 3850485 (D. Haw. Aug. 18, 2008) . . . . . . . . . . . . . . . . . . .   12

*Shea v. Kahuku Hous. Found., Inc.*,
Civil No. 09–00480 LEK–RLP,
2011 WL 1261150 (D.Haw. Mar. 31, 2011) . . . . . . . . . . . . . . . . . . .   16

*Sound v. Koller*, CV 09-00409 JMS-KSC,
2010 WL 1992198 (D. Haw. Mar. 5, 2010) . . . . . . . . . . . . . . . . . . .   10

*Trendex Fabrics, Ltd. v. Chad Jung Kim*,
CIV. 13-00253-LEK, 2013 WL 5947027 (D. Haw. Nov. 5, 2013) . . .  9, 16

*Trustees of PAMCAH-UA Local 675 Trust Funds v.*
*Am. Indus. Insulation, LLC*,
CIV. 10-00412 JMS, 2012 WL 2685083 (D. Haw. June 15, 2012) . . .  19

*Trustees of the PAMCAH-UA Local 675 Trust Funds v.*
*Drain-N-Rooter Plumbing, Inc.*,
CIV. 11-00565 SOM, 2012 WL 1409656 (D. Haw. Apr. 3, 2012) . . .  19

*Trustees of PAMCAH-UA Local 675 Trust Funds ex rel. Chun*
*v. Ekahi Fire Prot., LLC*,
CV 13-00100-HG-RLP, 2013 WL 2897794 (D. Haw. June 12, 2013) . 18

*Tylor v. Smart Enter., Inc.*,
CIV. 13-00289 HG-RLP,
2013 WL 6843056 (D. Haw. Dec. 26, 2013) . . . . . . . . . . . . . . . . . . . .  18

*US Bank Nat. Ass'n v. Yamamura*,
CIV.08-00358 DAE-KSC,
2009 WL 5851091 (D. Haw. Sept. 30, 2009) . . . . . . . . . . . . . . . . . . .  11

*Ware v. Chertoff*, CIV. 04-00671HG-LEK,
2008 WL 2653534 (D. Haw. June 27, 2008) . . . . . . . . . . . . . . . . . . .  12

*Wereb v. Cnty. Of Maui*, CIV. 09-00198 JMS-LE,
2010 wl 431976 (D. Haw. Feb. 4, 2010) . . . . . . . . . . . . . . . . . . . . . .  7, 19

*Williamson v. Basco*, CIV. 06-00012JMS-LEK,
2008 WL 954173 (D. Haw. Apr. 3, 2008) . . . . . . . . . . . . . . . . . . . . .  15

*Yamada v. Weaver*, CIV. 10-00497 JMS,
2012 WL 6019363 (D. Haw. Aug. 30, 2012) . . . . . . . . . . . . . . . . . . .  7

## A.  Statement of Facts

Plaintiff Steve Fotoudis is a lawfully admitted permanent resident of the United States who resides in Honolulu.  [Docs. 27 ¶ 1; 37, p. 3]   Mr. Fotoudis holds a form I-551 green card as well as a United States Social Security Administration Card and intends to become a naturalized citizen of the United States.  [Docs. 27 ¶¶ 2, 3; 37, pp. 2-3]   Mr. Fotoudis desires to possess an operational firearm or firearms and ammunition for lawful purposes, including in his home for self-defense.  [Docs. 27 ¶ 4; 37, p. 3]

On July 10, 2014, Mr. Fotoudis went to the Honolulu Police Department and attempted to apply for a permit to acquire a firearm.  [Docs. 27 ¶ 5; 37, p. 3]  Mr. Fotoudis was not permitted to apply for a permit to acquire pursuant to Section 134-2(d) of the Hawaii Revised Statutes because Mr. Fotoudis is not yet a citizen of the United States.  *See* Haw.Rev.Stat. § 134-2(d) (imposing a citizenship requirement on applicants for permits to acquire); [Docs. 27 ¶¶ 5-7; 37, p. 3]

## B.  Procedural Background

Plaintiff filed this action on July 24, 2014, seeking a temporary restraining order ("TRO") and preliminary injunction.  *See* Doc. Nos. 1 (Verified Compl.), 5 (Motion for TRO), 6 (Motion for Preliminary Injunction).  After a July 30, 2014 status conference with the court, the parties agreed to certain relief that rendered moot the Motions for TRO and preliminary injunction.  The parties also jointly requested that 'the court determine the constitutionality of [HRS] § 134-2(d)' based on stipulated facts without further briefing or argument.  *See* Doc. No. 24, Aug. 5, 2014 ltr. At 2.

1

Based on subsequent agreement, on August 22, 2014, Plaintiff filed the FAC ["First Amended Complaint"], Stipulated Facts, as well as the current Motion for Summary Judgment and for Permanent Injunctive Relief.  Doc. Nos. 26, 27, 29.  On August 29, 2014, Louie filed an Opposition, and the City filed a statement taking no position regarding the Motion.  Doc. Nos. 31, 32.  Stipulated proposed language as to the scope of an injunction was provided to the court on August 29, 2014, and during a September 16, 2014 status conference the parties agreed to modify that language.  *See* Doc. Nos. 34-36.  The Court determine[d] the matter under Local Rule 7.2(d) without a hearing.

[Doc. 37, pp. 5-6][1]

On September 17, 2014, this Court issued an Order granting Mr. Fotoudis' Motion for Summary Judgment and for Permanent Injunctive Relief.  [Doc. 37] This Court specifically found that "denying Fotoudis the opportunity to apply for (and to obtain) a permit merely because he is a lawful permanent resident and not a U.S. citizen 'is not a narrowly tailored means of achieving that goal.' . . . Accordingly, Fotoudis has succeeded in proving a violation of equal protection – he was denied an opportunity to apply for a permit to acquire firearms based solely

---

[1] During this entire process and other than Louie's opposition (which was obviously fruitless and to which Mr. Fotoudis did not respond), the only argument made by the defense was that the Complaint somehow failed to state a case or controversy.  The crux of the defense argument was that Mr. Fotoudis *was permitted* by law to apply to register his firearms pursuant to Section 134-3 of the Hawaii Revised Statutes.  Yet, this argument ignores that Mr. Fotoudis was not permitted to apply pursuant to any statute and the original Complaint plainly so alleges.  [Doc. 1]  Nevertheless, in order to ensure that there could be no argument as to whether a case or controversy existed, the Court requested and counsel did amend the complaint.  Moreover, because the Defendants agreed to permit Mr. Fotoudis to apply for a permit pursuant to Section 134-3, Mr. Fotoudis did agree to decline further pursuit of the requested pre-judgment injunctive relief.

on his status as a lawful permanent resident alien." [Doc. 37, pp. 11-12] And, "[s]imilarly, interpreting § 134-2(d) to deny Fotoudis the opportunity to apply for (and to obtain, if otherwise qualified) a permit to acquire firearms, solely because he is not a U.S. citizen, also violates the Second Amendment." [Doc. 37, p. 12] Further, this Court awarded Mr. Fotoudis the full permanent injunctive relief he requested. [Doc. 37, pp. 16-17]

Judgment was entered on September 17, 2014. [Doc. 38]

## C. Mr. Fotoudis is the prevailing party.

"A typical formulation [of prevailing party status] is that 'plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "In short, a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992); *see also Buckhammon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600-11 (2001) (a "judicially sanctioned change in the legal relationship between the parties" supports a fee award).

Here, Mr. Fotoudis received the complete relief he requested via an Order and Judgment entered by the Court. Mr. Fotoudis is the prevailing party.

## D.  The Lodestar Method justifies the requested fee.

The starting point in determining a reasonable fee is the calculation of the lodestar amount.  The "lodestar is calculated by multiplying the number of hours the prevailing plaintiff reasonably expended on the litigation by a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *McGrath v. Cty. Of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995).  The fact that damages were not at issue in no way affects the reasonableness of the lodestar:

> Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief. Rather, Congress made clear that it 'intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and ***not be reduced because the rights involved may be nonpecuniary in nature.***'
>
> ****
>
> . . . Congress' purpose in enacting § 1988. Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process. See House Report, at 3. These victims ordinarily cannot afford to purchase legal services at the rates set by the private market. . . . Moreover, the contingent fee arrangements that make legal services available to many victims of personal injuries would often not encourage lawyers to accept civil rights cases, which frequently involve substantial expenditures of time and effort but produce only small monetary recoveries. . . .

*City of Riverside v. Rivera*, 477 U.S. 561, 575-78 (1986) (emphasis in original)

(citations omitted).

Instead, the purpose of Section 1988 is to ***encourage*** competent attorneys to vindicate citizens' civil rights in cases perceived as "little." *Kerr v. Quinn,* 692 F.2d 875, 877 (2nd Cir. 1982) ("The function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel"); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *see also Kay v. Ehrier*, 499 U.S. 432, 437-38 (1991) (denying award of attorneys' fees to *pro se* litigant because to do so would provide a disincentive for Plaintiffs to retain independent and effective attorneys).   The fee awarded should also deter unconstitutional conduct.  S*ee Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980).

This Court should utilize the "broadest and most effective remedies available to achieve the[se] goals of our civil rights laws." *Dennis*, 611 F.2d at 1306 (citation omitted).  Competent and experienced counsel should be attracted to these cases.  "Lawyers must eat, so they generally won't take cases without a reasonable prospect of getting paid." *Moreno*, 534 F.3d at 1111 (9th Cir. 2008). Further, Defendants should be deterred from allowing the type of conduct that occurred in this case from occurring in the future.

## E. This Court should award a fair hourly rate.

This case implicates important Second Amendment and equal protection rights. This Court is rarely confronted with such issues particularly where no damages are at stake.[2] And, unlike many (if not most) of the decisions of this Court, cited below, Mr. Fotoudis' attorneys neither enjoyed nor expected a contingency fee of any damages award in addition to hourly rates. There is no market rate for this case.

It is the fee applicants' burden to justify the fees, *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987). The undersigned has extensively surveyed attorneys' fees and offers the cited opinions below (in addition to the attached Declarations and Exhibits) as proof that this Court should award a higher rate than those typically awarded by this Court.

This Court notoriously awards fees far below any reasonable rate a comparable attorney would demand on the mainland. *Nat'l Comm'n for Certification of Crane Operators v. Ventula*, CIV.09-00104SOM-LEK, 2010 WL 2179505 (D. Haw. Apr. 30, 2010) *adopted*, CV09-00104SOM-LEK, 2010 WL

---

[2] With few exceptions, including a few scattered Fourth Amendment cases arising from criminal investigations, the cases in which attorneys' fees are awarded consist primarily of copyright, IDEA or FAPE, various denials of benefits, and employment discrimination or contract cases. Many of those cases include statutory and actual damages awards. Thus, those attorneys are likely collecting a contingency fee in addition to the amount rewarded by the Court.

2176098 (D. Haw. May 25, 2010) (prevailing rate in Boise, Idaho too high for Hawaii); *Wereb v. Cnty. Of Maui*, CIV. 09-00198 JMS-LE, 2010 wl 431976 (D. Haw. Feb. 4, 2010) (reducing Seattle attorney's expected rate of $325 to $260 per hour based on "typical awards"); *Yamada v. Weaver*, CIV. 10-00497 JMS, 2012 WL 6019363 (D. Haw. Aug. 30, 2012) *adopted,* CIV. 10-00497 JMS, 2012 WL 6019121 (D. Haw. Nov. 30, 2012) (requests of specialized Indiana campaign finance attorneys of $400, $350, $300, $200, $150 and $135, $400, and $100 reduced to $300, $250, $225, $150, $125, $300 and $85, respectively).

Even worse, this Court has repeatedly acknowledged that the awarded rates are below Hawaii's prevailing rates.  "**Not only are Hawaii's prevailing market rates considerably lower than those in California, but *the rates awarded in this district are lower still*.**"  *Harris v. Trash Man, LLC*, CIV. 12-00169 HG-KSC, 2013 WL 1932715 (D. Haw. Apr. 16, 2013) *adopted*, CIV. 12-00169 HG-KSC, 2013 WL 1932710 (D. Haw. May 7, 2013) (emphasis added); *Onishi v. Redline Recovery Servs., LLC*, CIV. 10-00259, 2010 WL 5128723 at *n. 1 (D. Haw. Nov. 12, 2010) *adopted*, CIV. 10-00259, 2010 WL 5128720 (D. Haw. Dec. 9, 2010) ("**It must be noted that there is a distinction between the prevailing rates in the community, i.e, what one might charge and collect from a client, and the prevailing rates awarded by the Court**," reducing requested rate of $300 per hour to $285 per hour) (emphasis added).

The reason for these frequent and often drastic reductions of attorneys' requested rates in civil rights cases is the judicially imposed "cap" on senior attorneys' fees in civil rights cases.[3]  The evidence of this "cap" is overwhelming. *See Harris*, *supra.* ("[n]ot only are Hawaii's prevailing market rates considerably lower than those in California *but the rates awarded in this district are lower still*.") (emphasis added); *Olson v. Lui*, CIV. 10-00691 ACK, 2012 WL 3686682 at *4 (D. Haw. Aug. 27, 2012) (rejecting civil rights cases "cap" in a non-civil rights case, acknowledging that $350 is the "highest hourly rate" awarded in civil rights cases); s*ee Aloha Airlines, Inc. v. Mesa Air Grp., Inc.*, 07-00007 DAEKSC, 2007 WL 2320672 (D. Haw. Aug. 10, 2007) (unpublished) (acknowledging "maximum hourly rate" awarded for "senior attorneys").  This "cap" creates an artificial ceiling on civil rights attorneys' fees from which the rates awarded to less experienced attorneys are calculated.

The cited reasons for these reductions are not based on the economic realities of solo practitioners or other attorneys struggling with the high costs and taxes of Hawaii; and most often not based on the complexity of the case or shoddy

---

[3] The "cap" appears unique to civil rights cases.  When one lawyer correctly noted that $965 per hour was approved in Hawaiian Telcom's bankruptcy proceeding, styled *In re Hawaiian Telcom Communications*, *Inc.*, Case No. 08-02005, the Court found that case "neither controlling nor persuasive in this case because of the fundamental differences in bankruptcy litigation and civil rights litigation." *Blake*, *supra.*; *see also Olson, supra*. (where attorney normally billed $675 per hour, was awarded $425 with this Court specifically departing from the civil rights "cap" and observing that *Olson* was not a civil rights case).

workmanship.   Instead, most frequently, this Court simply relies on its own "knowledge" of "prevailing" Hawaii attorneys' fees.  *Robinson v. Plourde*, 717 F.Supp.2d 1092, 1097-98 (D.Haw. 2010) ("Based on this Court's knowledge of the community's prevailing rates, the hourly rates generally granted by the Court . . ." attorneys' requested $300 per hour reduced to $250 and $275, citing cases finding $200 per hour reasonable for attorney with 31 years' experience in 2008, $285 reasonable for out-of-state attorney with 30 years' experience in 2010, a "prevailing rate in the community of $250 to $285" for attorneys with 20 to 30 years "general litigation" experience in 2008, and $225 reasonable for attorney with 35 years of experience in 2008);  *Trendex Fabrics, Ltd. v. Chad Jung Kim*, CIV. 13-00253-LEK, 2013 WL 5947027 (D. Haw. Nov. 5, 2013) (reducing attorneys' rates from a requested $250 per hour and $195 per hour to $175 and $125, respectively, based on "the Court's knowledge of the prevailing rates in the community");  *Sam K. v. Dep't of Educ., Hawaii*, CV 12-00355 ACK-BMK, 2013 WL 1856069 (D. Haw. Apr. 30, 2013), *adopted,* CIV. 12-00355 ACK, 2013 WL 3071317 (D. Haw. June 17, 2013) (request of $375 per hour unreasonable and reduced to $275 based on that attorneys' previous award of $275 per hour five years prior, and another attorney having been awarded $300 per hour in similar cases);  *I.T. ex rel. Renee T. v. Dep't of Educ., Hawaii*, CIV. 11-00676 LEK, 2012 WL 6969333 (D. Haw. Nov. 30, 2012) *adopted*, CIV. 11-00676 LEK, 2013 WL

419016 (D. Haw. Jan. 31, 2013) (attorney requested $290, submitted affidavit stating $300 was reasonable, court awarded $275 because Court "previously deemed" $275 sufficient for attorney); *Dep't of Educ. Hawai''i v. C.B. ex rel. Donna B.*, CIV. 11-00576 SOM, 2012 WL 7475406 (D. Haw. Sept. 28, 2012) *adopted*, CIV. 11-00576 SOM, 2013 WL 704934 (D. Haw. Feb. 26, 2013) (lawyer with 17 years' experience request for $275 reduced to $250, citing 2010 case in which Court found $250 reasonable; first and second year associate requested $200, reduced to $130 because "Court typically awards attorney with similar experience between $120 and $150 per hour"); *Nat'l Comm'n for Certification of Crane Operators v. Ventula*, *supra*. (reducing out-of-state counsel's request for Boise Idaho rates, citing prior reductions from requested $585 per hour and $350 to $285 per hour, and noting that the requests "exceed the rates awarded to more experienced attorneys in this district"); *Sound v. Koller*, CV 09-00409 JMS-KSC, 2010 WL 1992198 (D. Haw. Mar. 5, 2010), *adopted*, CV 09-00409 JMS/KSC, 2010 WL 1992194 (D. Haw. May 19, 2010) (reducing requests of $350, $225, $585, $175, and $125 to $285, $185, $350, $150, and $120, respectively, based on Court's awareness of prevailing rates); *Black v. City, Cnty. Of Honolulu*, CV 07-00299 DAE-LEK, 2010 wl 653026 (D.Haw. Feb. 22, 2010), *adopted* CIV 07-00299 DAE, 2010 wl 3940979 (D. Haw. Sept. 29, 2010) (reducing attorney's request of $275 per hour to $140 per hour based on the Court's knowledge of

"prevailing market rates");[4] *Ko Olina Dev., LLC v. Centex Homes*, CIV. 09-00272DAE-LEK, 2010 WL 447451 (D. Haw. Feb. 9, 2010) (requests of $490, $450, $210, and $135 reduced to $280, $260, $130 and $85 based on "knowledge of prevailing rate" and "typical awards," citing prior opinions); *Wereb, supra.* ("typical award"); *US Bank Nat. Ass'n v. Yamamura*, CIV.08-00358 DAE-KSC, 2009 WL 5851091 (D. Haw. Sept. 30, 2009) *adopted*, CIV 08-00358DAE-KSC, 2009 WL 3461288 (D. Haw. Oct. 27, 2009) (request of $200 reduced to $175 based on "knowledge of prevailing rates); *Sakaria v. FMS Inv. Corp.*, CIV. 08-00330 SOMLEK, 2009 WL 1322356 (D. Haw. May 12, 2009) (reducing request of $175 to $150 because it would be "inconsistent with this Court's findings in other motions for attorney's fees," citing reduction from $155 to $140 in 2006 and $160 to $140 in 2008); *Boles v. Engle*, CIV 08-00438 ACK-KSC, 2009 WL 1035065 (D. Haw. Mar. 12, 2009) *adopted as modified*, CIV 0800438 ACK-KSC, 2009 WL 1035127 (D. Haw. Apr. 15, 2009) (requests of $390, $250, $200, $145, and $150 reduced to $280, $240, $165, $130, and $80, respectively, based on "knowledge of prevailing rates in the community . . ., [and] the hourly rates generally granted by

---

[4] This fee reduction was affirmed in *Black v. City and County of Honolulu*, 512 Fed. Appx. 666 (2013), but it appears that counsel argued only that he was entitled to "premium" lodestar because the case was taken on contingency – an argument rejected based on *Davis v. City & Cnty. of San Francisco,* 976 F.2d 1536, 1548–49 (9th Cir.1992), *vacated in part on other grounds,* 984 F.2d 345 (9th Cir.1993).

the Court . . .”); *Blake v. Nishimura*, Civ. 08-00281 SPKLFK, 2008 wl 4754858 (D. Haw. Oct. 24, 2008) (requests of $275 and $125 reduced to $240 and $80 finding requests “inconsistent with this Court’s recent decisions” and unreasonable because of the Court’s awareness of “the prevailing rates in the community”); *Kuroiwa v. Lingle*, CIV 08-00153 JMS-KSC, 2008 wl 4483772 (D. Haw. Sept. 29, 2009) (finding request of $225 “manifestly unreasonable” in light of cited prior decisions and reducing rate to $150); *Seo Jeong Won v. England*, CIV.07-00606 JMS LEK, 2008 WL 3850485 (D. Haw. Aug. 18, 2008) (finding requests for $310, $155, and $120 to $285, $130, and $85 unreasonable and instead awarding $285, $130, and $85 based on “this Court’s knowledge of the prevailing rates in the community” and the submissions in the case); *Ware v. Chertoff*, CIV. 04-00671HG-LEK, 2008 WL 2653534 (D. Haw. June 27, 2008) *adopted*, CIV.04-00671HG-LEK, 2008 WL 3349066 (D. Haw. Aug. 12, 2008) (reducing request for $350 to $280, finding the request “inconsistent with the Court’s prior recent decisions” and based on “prevailing rates in the community,” despite recognizing the demands on counsel’s time and the undesirability of a civil rights action against the federal government); *Goray v. Unifund CCR Partners*, CIV. 06-00214 HG-LEK, 2008 WL 2404551 (D. Haw. June 13, 2008) *adopted*, CIV.06-00214HG-LEK, 2008 WL 2714369 (D. Haw. July 11, 2008) (reducing request of $300 to $280 based on “this Court’s knowledge of the prevailing rates in the community

and the submissions in this case" and finding the request "unreasonable and inconsistent with this Court's recent decisions" despite a state court having awarded the attorney $300 per hour); *D.C. v. Dep't of Educ.*, CIV.07-00362 ACK-KSC, 2008 WL 2884657 (D. Haw. May 28, 2008) *adopted in part, rejected in part,* CIV 07-00362 ACKKSC, 2008 WL 2902079 (D. Haw. July 25, 2008) (based on prior cited awards, $295 request deemed "slightly excessive" lowering rate to $275); *World Triathalon Corp. v. Dunbar*, 539 F. Supp. 2d 1270, 1283-84 (D. Haw. 2008) *aff'd in part, World Triathlon Corp. v. Hapai*, 320 F. App'x 778 (9th Cir. 2009) (reduction based on "Court's knowledge of the community's prevailing rates, the hourly rates generally granted by the Court . . ."); *Mabson v. Ass'n of Apartment Owners of Maui Kamaole*, CV 06-00235 DAELEK, 2008 WL 2061529 (D. Haw. Feb. 26, 2008) *adopted,* CV 06-00235 DAELEK, 2008 WL 2061409 (D. Haw. May 13, 2008) (paralegal reduced from $125 to $85); *Ireijo v. Agnew*, CIV. 07-00290JMS/LEK, 2007 WL 4633328 (D. Haw. Sept. 26, 2007) *adopted,* CIV. 07-00290JMSLEK, 2007 WL 4190694 (D. Haw. Nov. 20, 2007) (requests of $375, $300, and $170 found unreasonable "[b]ased on this Court's knowledge of the prevailing rates in the community" and reducing to $285, $265, and $150, respectively); *Ramos v. Murakami*, CV 06-00126 HG-LEK, 2006 WL 3248376 (D. Haw. Nov. 6, 2006) (request from licensed attorney in Illinois serving as Hawaii paralegal reduced from $125 to $80  based on "Court's knowledge of prevailing

rates in the community"); *Berry v. Hawiian Exp. Serv., Inc.*, 03-00385 SOMLEK, 2006 WL 4102120 (D. Haw. Oct. 25, 2006) *adopted as modified*, 03-00385 SOMLEK, 2007 WL 689474 (D. Haw. Mar. 2, 2007) *aff'd on other grounds Berry v. Dillon*, 291 F. App'x 792 (9th Cir. 2008) ("in light of its own knowledge of the prevailing rates in the community" requests for $350, $200, and $120 were unreasonable and reduced to $250, $150, and $85); *Parr v. JS & W Hawai'i, Inc.*, CIV 06-00041 JMS-LEK, 2006 WL 2850097 (D. Haw. Oct. 2, 2006) *adopted* 06-00041 JMSLEK, 2007 WL 30599 (D. Haw. Jan. 3, 2007) ($275 request reduced to $250 based on "Court's knowledge of prevailing rates"); *Paramount Pictures Corp. v. Carroll*, CV 05-00260 ACKLEK, 2006 WL 1990815 (D. Haw. July 13, 2006) (requests reduced from the requested $208.25, $106.25, $175, and $100 to $130, $75, $75, $160, and $80, respectively based on "Court's knowledge of prevailing rates in the community").

Yet as demonstrated by the pervasive reductions imposed in the above-cited cases, this "knowledge" is artificial and does not reflect the prevailing market rate. Indeed, this Court has found that its "knowledge" trumps empirical evidence contradicting the judicially imposed "cap," stating "[a]lthough attorneys are required to provide evidence that the rate charged is reasonable, [citation omitted], this Court is better aware of the prevailing rates in the community, having had the opportunity to review fee requests of many attorneys." *Angel v. Capital Research*

*Grp.*, *Inc.*, CIV 10-00364 HG/KSC, 2012 wl 2563168 (D. Haw. June 28, 2012). Accordingly, in direct disregard to numerous declarations from lawyers in the community and other evidence, this pervasive "knowledge" of prevailing rates has even served to reduce requested rates that were consistent with the published rates of numerous Honolulu law firms in a well-respected publication relied upon by the legal community. *Dep't of Educ. Hawai"i v. C.B. ex rel. Donna B.*, *supra*. ("Defendants' counsel submitted a list of the fifty largest law firms in Honolulu that was published by the *Pacific Business News* on April 27, 2102" and requested rates consistent with those published rates); *Blake v. Nishimura*, CIV 08-00281 LEK, 2010 wl 13724920 (D. Haw. Mar. 31, 2010) (counsel also submitted a similar *Pacific Business News* publication from May 29, 2009) *Black*, *supra*. (2006 *Pacific Business News* list submitted); *Ko Olina Dev.*, *supra*. (2009 *Pacific Business News* publication list submitted); *Bandalan v. Castle & Cooke Resorts, LLC*, CIV 07-00591 DAE-LEK, 2009 WL 1955328 (D. Haw. June 30, 2009) *adopted* CIV. 07-00591DAE-LEK, 2009 WL 2231693 (D. Haw. July 24, 2009) (submitted 2008 *Pacific Business News* publication as well as declaration from another attorney); *Williamson v. Basco*, CIV. 06-00012JMS-LEK, 2008 WL 954173 (D. Haw. Apr. 3, 2008) (submitted 2006 *Pacific Business News* publication).

Thus, this judicial "knowledge" of the rates in this District does not appear to be based on empirical evidence of the market, but on previously awarded rates that were also reduced by this Court. *Trendex Fabrics*, *supra*. (*citing Au v. The Funding Group, Inc.,* No. CV 11–00541 SOM–KSC, 2013 WL 1187919, at *8 (D.Haw. Mar. 21, 2013)) (adopting finding that $165 is a reasonable hourly rate for an attorney with six years of experience); *Shea v. Kahuku Hous. Found., Inc.,* Civil No. 09–00480 LEK–RLP, 2011 WL 1261150, at *7 (D.Haw. Mar. 31, 2011) (finding that $125 per hour is reasonable for an attorney with three years [sic] experience)"); *I.T. ex rel. Renee T. v. Dep't of Educ., Hawaii, supra.* (reduced because this Court "previously deemed" reduced rate sufficient); *C.Y. ex rel. Cheryl Y. v. Dep't of Educ., Hawai'i*, CIV. 11-00335 JMS, 2011 WL 7102572 (D. Haw. Dec. 29, 2011), *adopted* CIV. 11-00335 JMS, 2012 WL 253147 (D. Haw. Jan. 25, 2012) (finding requested rate reasonable based on prior awards); *B.T. ex rel. M.T. v. Dep't of Educ., Hawai'i*, CIV. 10-00754 JMS, 2011 WL 3021129 (D. Haw. June 27, 2011) *adopted*, CIV. 10-00754 JMS, 2011 WL 3022042 (D. Haw. July 21, 2011) (same); *C.B. ex rel. Donna B.*, *supra*. (lawyer with 17 years' experience request for $275 reduced to $250 based on 2010 finding that the rate was reasonable for that lawyer); *Ventula*, *supra*.; *Ko Olina Dev., LLC*, *supra*.; *Wereb*, *supra*.; *Sakaria*, *supra*.; *Boles*, *supra*.; *Blake*, *supra*.; *Kuroiwa*, *supra*.;

16

*Ware*, *supra*.; *Goray*, *supra*.; *D.C. v. Dep't of Educ.*, *supra*.; *World Triathalon Corp.*, *supra*.; *Sam K.*, *supra*.; *Mabson*, *supra*.

Hawaii's few civil rights attorneys have also only received only nominal rate increases over the past ten years despite inflation. *Hawaii Disability Rights Center, et. al. v. State of Hawaii*, Civ. No. 03-00524 HG-KSC (D.Haw. 2005); *Doe v. Keala*, 361 F.Supp.2d 1171 (D. Haw. 2005) (attorneys Shelby Floyd and Stanley Levin awarded $275 per hour in 2004). Although inflation necessitates a steady increase in fees even throughout the course of litigating one case, *See Gates v. Deukmijian*, 987 F.2d 1392, 1406 (9th Cir. 1992) (recognizing that rates increase during the course of litigation), even the inevitable reality of inflation does not seem to overcome the Court's "knowledge" of prevailing rates. *I.T. ex rel. Renee T. v. Dep't of Educ., Hawaii*, CIV. 11-00676 LEK, 2012 WL 6969333 (D. Haw. Nov. 30, 2012) *adopted*, CIV. 11-00676 LEK, 2013 WL 419016 (D. Haw. Jan. 31, 2013) (where attorney requested an increase from $275 to $290 for litigation spanning two years, this Court found "[i]nflation alone is not sufficient for the requested rate increase" despite counsel's observation that "[w]ithout an adjustment, real compensation would decrease as one's experience increases"). Despite inflation and the continued increase in experience, senior attorneys are capped by the Court at $300 per hour (with an occasional $350 award), an increase of approximately 9% since 2004. In the meantime and with the exception of the

recent budget crisis, federal District Court Judges have received consistent increases in salary to account for inflation, alone, amounting to approximately a 20% increase since 2000.[5]

The instant moving attorneys request that their rate be established pursuant to a true market value rather than these judicially imposed rates.   Attorney Holcomb requests a rate of $355 per hour.  Attorney Beck requests a rate of $275 per hour.

Counsel recognizes that the Court's systemic reductions in attorneys' rates have exacerbated the determination of a reasonable market rate because attorneys ask for a lesser rate as a result of these reductions.   *Tylor v. Smart Enter., Inc.*, CIV. 13-00289 HG-RLP, 2013 WL 6843056 (D. Haw. Dec. 26, 2013) (lawyer requesting $200, which is "'at or below rates customarily charged in the community for similar work by attorneys of similar, experience, ability, and standing in the Honolulu legal community,'" reduced to $150); *Trustees of PAMCAH-UA Local 675 Trust Funds ex rel. Chun v. Ekahi Fire Prot., LLC*, CV 13-00100-HG-RLP, 2013 WL 2897794 (D. Haw. June 12, 2013) (attorney requesting $275 per hour where "customarily charges $325 per hour for his

---

[5] http://www.uscourts.gov/JudgesAndJudgeships/JudicialCompensation/judicial-salaries-since-1968.aspx.

work.");[6]  *Trustees of PAMCAH-UA Local 675 Trust Funds v. Am. Indus.
Insulation, LLC*, CIV. 10-00412 JMS, 2012 WL 2685083 (D. Haw. June 15, 2012)
*adopted,* CIV. 10-00412 JMS, 2012 WL 2685016 (D. Haw. July 5, 2012) (same);
*Trustees of the PAMCAH-UA Local 675 Trust Funds v. Drain-N-Rooter Plumbing,
Inc.*, CIV. 11-00565 SOM, 2012 WL 1409656 (D. Haw. Apr. 3, 2012) *adopted* CV
11-00565 SOM-RLP, 2012 WL 1409655 (D. Haw. Apr. 23, 2012) (same); *Wereb*,
*supra*.; *Dep't of Educ. Hawai"i v. C.B. ex rel. Donna B.*, *supra.* (attorney requested
$275 per hour, a reduction from his customary $300 per hour rate, and was reduced
to $250); *Harris*, *supra*.[7]  The Court then relies on these requests as support for its
knowledge of the prevailing market rate.[8]

---

[6] In this case, other attorneys were awarded a higher rate than the Court would
have found "reasonable" (presumably pursuant to the same reasoning Plaintiffs
challenge, herein), finding the "blended rate" reasonable.

[7] The Court in this particular case did note that the attorney had a "blemished
reputation," having been publicly reprimanded.

[8] Counsel notes that several lawyers have, generally having had their requested
rates previously reduced, subsequently requested what this Court awards.
However, this does not appear to be a reflection of actual prevailing market rates.
Instead, the lawyers appear to have succumbed to the rate reduction and choose not
to fight the "rate reduction" battle in each and every case.  Moreover, in the
overwhelming majority of these cases, the fee applicants' clients had been awarded
damages or, at the very least, requested damages.  Thus, the attorney enjoyed or
expected to enjoy contingency fees in addition to the hourly rate awarded by the
Court.  Consistent with Section 1988, attorneys should be rewarded for taking
cases that do not involve damages but effectuate important social change.  Such
cases appear few and far between, as one would expect from the "typical awards."

This is flawed reasoning.  The attorneys assume the Court will reduce their rate so they request a lower rate.  The Court then continues with its longstanding policy of drastic reduction of attorneys' fee requests, and reduces the fee even further, relying on prior reductions.  This policy is inconsistent with Section 1988. Hawaii attorneys are no less capable than their mainland counterparts.  And, Hawaii citizens deserve representation by attorneys who are just as capable as those of the mainland.  These consistently low and even further reduced rates have created an environment where well-intentioned, experienced, and competent counsel are disinclined from representing Hawaii's victims of constitutional violations because they will not be justly compensated for their efforts.  *See* Decls.

Perhaps even more persuasive is the fact that the City does not even believe this Court's "typical awards" are reasonable.  *See* Curtis Lum, *Pacific Business News*, "City will spend over $1 million in rail-related attorneys' fees" (May 13, 2011) (attached as **Exhibit Seven**).  The City, which obviously employs its own attorneys, hired outside law firms charging $295 to $495 per hour to litigate its rail related cases.  *Id*.  Surely, counsel that is vindicating the rights of citizens in cohesion with Congressional intent deserves an award of attorneys' fees within the range the City pays its own lawyers.

Moreover, the awarded rates appear judicially determined rather than based on any real "reasonable market value."  Counsel is merely requesting a fair market

value and relies on the *Laffey* Matrix as evidence of a baseline standard that would reflect the true market value of legal services, albeit in a jurisdiction where all other costs besides legal services are lower. **Exhibits Two** through **Five**. Notably, the rates awarded in this Court's cases eight to ten years ago, were fairly represented in the Laffey Matrix. Indeed, the rates in 2004-2005 for a lawyer with the undersigned's experience was $270-280 per hour.[9] Yet, those awards have not risen over time. A review of current cases shows that the most senior attorneys are generally "capped" at $300 per hour with few exceptions allowing $350 per hour rates. Yet, had the rates continued to increase, as they have nationally and would in a fair market environment, and attorney with 8-10 years' experience could expect $355 per hour.[10] Counsel has attached the *Laffey* Matrix as **Exhibit One**.

---

[9] A lawyer with Mr. Beck's experience would have billed $220-225 per hour.

[10] Although Plaintiffs' counsel have used the Department of Justice Laffey matrix as the basis for their hourly-rate fee request, the Adjusted Laffey matrix is an accepted benchmark for fee awards in various jurisdiction, accounting for inflation in the "Legal Services Index." Under that rubric, the fee for an 8-10 year lawyer for this year is $567 per hour; the fee for a 4-7 year lawyer is $393 per hour, and the fee for a 1-3 year lawyer is $320 per hour. See, http://www.laffeymatrix.com/see.html (**Exhibit One**). The Third Circuit Court adopted the Adjusted Laffey Matrix. *Interfaith Community Organization v. Honeywell International, Inc.,* 426 F.3d 694 (3rd Cir. 2005). ("In updating the matrix to account for inflation from 1989-2003, ICO relied on the legal services component of the nationwide Consumer Price Index ("the Legal Services Index"), a measure of inflation in the cost of legal services maintained by the Bureau of Labor Statistics."). http://www.laffeymatrix.com/see.html

This Court has considered the *Laffey* Matrix in at least one other case where out of state attorneys urged its application pursuant to the "narrow" exception to the local forum rule and citing *Prison Legal News v. Schwartznegger*, 608 F.3d 446, 454 (9th Cir. 2010) for the proposition that the *Laffey* Matrix is not a suitable indicator of appropriate fees because it is based on Washington, D.C. rates rather than those of San Francisco. *Frankl v. HGH Corp.,* CIV 10-00014 JMS, 2012 wl 1755423 (D. Haw. Apr. 23, 2012). Notably, in that case, state officials were arguing for application of the *Laffey* Matrix *with an added cost-of-living adjustment* to account for the cost of living in San Francisco. *Prison Legal News*, 608 F.3d at 454. It is true that the Ninth Circuit found "just because the *Laffey* Matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere," and that the Ninth Circuit has not adopted the *Laffey* Matrix. S*ee Frankl, supra*. But, it is also true that the Ninth Circuit has not been confronted with a "market" where the cost of living is the second highest in the entire nation, yet the "typical awards" are less than that of Boise, Idaho or Terre Haute, Indiana.

Moreover, this Court would promote the purpose of 42 U.S.C. § 1988 by awarding the rate in Washington, D.C. Costs of living in Honolulu are higher than anywhere in the nation. **Exhibits Two** through **Five**. Although costs are much higher in Honolulu, the value of money in Honolulu is almost identical to the value

of money in Washington, D.C.  **Exhibit Five**.  This Court is charged with the duty of encouraging attorneys to file cases challenging Hawaii constitutional violations rather than moving their practices elsewhere.  A fair rate would accomplish rather than diminish that goal of 42 U.S.C. § 1988.

Although fair application of other "lodestar" factors (discussed below) demonstrates that counsel deserves a rate higher than that identified in the *Laffey* Matrix, counsel is nonetheless requesting only the *Laffey* Matrix rate, *i.e.*, that Mr. Holcomb receive an hourly billing rate of $355 and Mr. Beck receive a rate of $275 per hour.  Plaintiffs rely on the attached Declarations of those attorneys and of Attorney Kevin O'Grady to demonstrate that each attorney's experience and skill levels justify this award.  As shown by the discussion above, the Declaration of Mr. O'Grady, the modern cost of living and doing business in Honolulu, and fair market considerations, counsel believes that the *Laffey* Matrix accurately portrays reasonable rates for lawyers of comparable skill in Honolulu in cases that are much less novel and risky than the instant case.  The constant reduction of requested fee rates represents "towing the line" on attorneys' fees rewards.  Section 1988 is not promoted as attorneys are discouraged rather than encouraged to bring cases challenging constitutional violations where no damages are at stake.  The requested rate is justified.

## F.  *Johnson/Kerr* Factors

Although this was a novel case, counsel is not requesting any multiplier be awarded.  Counsel is only requesting a fair market rate be awarded.

## G.  CONCLUSION

Mr. Foutoudis requests that this Court enter an Order awarding attorneys' fees to Mr. Holcomb in the amount of $21,969.10 and to Mr. Beck in the amount of $4,520.42.  These requests include Hawaii's GET Tax.  *Donkerbrook v. Title Guar. Escrow Servs., Inc.*,  Civ No. 10–00616 LEK–RLP, 2011 WL 3649539, at *9–10 (D.Hawai'i Aug.18, 2011).

DATED:  Honolulu, Hawaii; September 26, 2014.

*s/Richard L. Holcomb*
Richard L. Holcomb
Attorney for Plaintiffs
