# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STEVE FOTOUDIS, | ) CASE NO. 1:14-cv-00333 JMS-RLP |
| Plaintiff, | ) |
| vs. | ) DECLARATION OF RICHARD L. |
| | ) HOLCOMB IN SUPPORT OF MOTION |
| CITY AND COUNTY OF HONOLULU, | ) FOR ATTORNEYS' FEES |
| | ) |
| LOUIS KEALOHA, in his official capacity, and | ) |
| | ) |
| DAVID LOUIE, in his official capacity, | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF RICHARD L. HOLCOMB
## IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1. I am an attorney duly licensed to practice law in the State of Hawai'i and before the District Court for the District of Hawai'i as well as the Ninth Circuit Court of Appeals. This declaration is made to the best of my knowledge and based on personal knowledge of the matters set forth herein.

2. I am an attorney of record for the Plaintiff, Steve Fotoudis, in the above-captioned case.

3. I prepared the foregoing Memorandum in Support of the Motion for Attorneys' fees and believe that all of the factual averments in that

1

Memorandum are true and accurate to the best of my knowledge. This includes but is not limited to the Statement of Facts and Procedural History portion(s) of the Memorandum.

## SETTLEMENT

4. As detailed in the foregoing Memorandum and the attached Timesheet, in order to minimize Attorneys' fees and costs, I have made diligent efforts to settle this case since the first status conference in this matter. Consistent with all of counsel's cases with the City (at least), Defendants rejected those efforts after it was unable to resolve the underlying eminent domain action.

5. Although I reduced the amount I believe that I was entitled to and based the offer on the billing rate previously set by this Court for Attorney Beck and me, the City stated without explanation that my offer was "too high." I again reduced the rate by $700 and never received a response from Defendants as to this offer.

6. Once the Motions were filed and without any response from Defendants, I raised the amount of the offer as I had warned them I would do. I never received any response to that offer.

7. I have exercised extraordinary billing discretion in this case. Not only are there several "NO CHARGE" entries on my timesheet, but also, as agreed upon by the parties, I did not file further briefing on the issues presented

when I filed Mr. Fotoudis' Motion for Summary Judgment and for Permanent Injunctive Relief. I did not respond at all to the Attorney General's Answer and/or its Opposition to the Motion despite it having been my understanding that the Defendants would not respond in an effort to minimize efforts expended on this case.

## BIOGRAPHICAL INFORMATION

8. I attended David Lipscomb University, a small liberal arts college, from 1992 through 1996. I received an academic scholarship and earned a B.S. in Business Administration. I graduated with a 3.24 G.P.A. and maintained nearly a 4.0 G.P.A. in my junior and senior years.

9. From 2001 to 2004, I attended the University of Tennessee College of Law, where I won three Academic Achievement Awards and appeared on the Dean's List Honor Roll regularly. I graduated with a 3.44 G.P.A., earning my J.D.

10. I was a law clerk for Attorney Richard L. Gaines at Eldridge and Gaines in Knoxville, TN from August 2001 to May 2005. There, I researched a number of legal issues, including constitutional issues. In addition to drafting motions and legal memoranda, I also substantially drafted a number of appellate briefs that, after finalization, were submitted in the Tennessee Court of Criminal Appeals and the Sixth Circuit Court of Appeals.

11. I was admitted to the Tennessee bar in 2005 and, as far as I know, remain a member in good standing in Tennessee, the United States District Courts for the Eastern and Middle Districts of Tennessee and the Sixth Circuit Court of Appeals.

12. From May 2005 until June of 2008, I was employed as an associate attorney by the Law Offices of James A. H. Bell, P.C. in Knoxville, TN. There I litigated a number of constitutional issues and represented defendants in all aspects of various state and federal criminal, quasi-criminal and administrative proceedings many of which were "high profile."[1] I researched, drafted, and argued motions, memoranda and briefs (appellate and otherwise) on behalf of a variety of clients. I elicited testimony from witnesses at depositions, evidentiary hearings and sentencing. I also argued before the federal courts in a number of cases and before Tennessee appellate courts. My most rewarding experience was when I initiated and served as lead counsel in a case that ultimately led to Tennessee's Drug Tax Act being declared unconstitutional.

13. From June 2008 to June 2009, I managed my own practice and was again affiliated with Eldridge and Gaines. I essentially performed the same

---

[1] In the "high profile" cases, I served as co-counsel for Mr. Bell.

functions as I did at Mr. Bell's firm.  However, I was solely responsible for the cases as well as the administrative duties necessitated by my practice.

14. In May of 2009, I moved with my family to Honolulu.  In June, I started working as an associate at Dubin Law Offices in Honolulu.  There, I primarily drafted memoranda and appellate briefs addressing a wide variety of civil litigation issues.

15. I took the Hawaii bar exam in July of 2009 and was admitted to the Hawaii Bar and this Court in November 2009.

16. In March of 2010, I started my own firm, which is now Holcomb Law, LLLC.  Since that time, I have represented people accused with OVUII, and have represented people in a wide range of civil and civil rights litigation, including challenging constitutional violations and other violations of federal law.  This litigation includes but is not limited to Hawaii's flagship Second Amendment cases, such as this one, and of which this Court is well aware.

17. I am admitted to the Ninth Circuit Court of Appeals and have drafted the briefs and argued before an appellate panel in December 2012, in a very important Second Amendment case originating from this Court.

18. Other than perhaps Attorney Beck, I am aware of no other lawyer in Hawaii (or elsewhere) with this degree of experience in challenging Second Amendment rights through § 1983 actions in this District.

19. I also litigate a number of consumer rights cases before this Court, including cases involving violations of the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act.21.

20. I have been nationally and regionally published:

    Richard L. Holcomb and David B. Smith, *Challenging Pretrial Lis Pendens on Substitute Property*, THE CHAMPION, April 2008, at 36.

    Richard L. Holcomb, *Preventing Post-Hudson Pitfalls*, THE CHAMPION, May 2007, at 28.

    Richard L. Holcomb and James A.H. Bell, *The Controlled Substance Tax: Analysis, Argument & Attack*, THE CHAMPION, March 2006, at 28.

    Richard L. Holcomb, *"Ethical" Tolling?*, FOR THE DEFENSE, April-May 2006, at 5.

    Richard L. Holcomb, *Sex Crimes are A-Changing*, FOR THE DEFENSE, October-November 2006, at 6.

21. I have been invited to lecture at a number of Continuing Legal Education seminars, including: lectures in 2006 addressing Tennessee's Drug Tax, in Memphis, Nashville, and Knoxville, where attendees received two hours CLE credits; a lecture in 2007 addressing "dog sniffs" and conditional pleas in Memphis and Nashville, where attendees received 1.5 hours CLE credit; and a lecture in Honolulu, HI addressing "Police Liability," and more

specifically, *Monell* and qualified immunity in 2013 where attendees received VCLE credits.

22. I have remained active in a variety of Professional Associations, serving on the Board of Directors and as Chairperson for the Drug Tax Committee for the Tennessee Association of Criminal Defense Lawyers. I currently serve as Hawaii's state delegate for the National College of DUI Defense. I was an active member of the National Association of Criminal Defense Lawyers. I remain an active member of the American Association for Justice and the F Warriors alumni group for the renowned Trial Lawyers' College. I am an active member of the National Association of Consumer Advocates. I am an active member of the Federal Bar Association. I am also an obligatory member of the Hawaii State Bar Association.

23. I have consistently sought to improve my skills as a lawyer, devoting hundreds of hours and thousands of dollars each year to continuing education, even though I do not receive "credit" for most of that ongoing education. I have traveled the country in pursuit of becoming a better lawyer. For example, in September 2013, I graduated from Gerry Spence's Trial Lawyers College, a renowned month long program in Dubois, WY. Two weeks later, I attended Pete Barry's intensive three day FDCPA Bootcamp in San Francisco, CA. I was also invited to and completed an

invitation-only three day intensive cross-examination seminar with the esteemed Terry MacCarthy in Tulsa, OK. I also attended the Federal Bar Association's recent Honolulu CLE event, where Judge Seabright moderated. I attended the FBA's CLE regarding settlement conferences where Judge Chang was a speaker. I have just returned from the American Association for Justice's Deposition College in Denver, CO.

## BASIS FOR REQUESTED RATE

24. For purposes of calculating attorneys' fees in this action, I have therefore determined a reasonable hourly rate for my services in this district, as further described below.

25. Looking to all available sources, including the *Laffey* Matrix, published and unpublished cases from this Court and other courts, the prevailing cost of living in Hawai'i, and the novelty of the case involved, I have selected $355/hour as a reasonable hourly rate in this matter.

26. I have attached a true and exact copy of the *Laffey* Matrix as **Exhibit One**.

27. As described extensively in the accompanying memorandum, I believe this to be a reasonable rate for my services in a case such as this. I have dedicated my career to pursuing cases for actual human beings who were being exploited and abused by government or corporate entities and/or prosecuted, often unjustly, by state and federal governments. People that I

have represented in cases similar to the instant case cannot find legal representation because few lawyers will take a righteous case if it means numerous hours of under- or un-compensated effort, especially if it is unpopular (as is this one) or not newsworthy. I find it difficult to accept that tyrannically abridging the Second and Fourteenth Amendments of the Bill of Rights in a systemically discriminatory way, and over a long period of time can ever be a "little" case or unworthy of the courts' attention, even in the absence of significant financial damages.

28. Moreover, I am struggling to operate a law firm and support my family in the American city with perhaps the highest costs of living, taxation, and other expenses. I have attached as **Exhibit Two** a true and exact copy of the United States Census Bureau's report showing that Honolulu's cost of living is only surpassed by that of Manhattan.

29. I have attached as **Collective Exhibit Three** a true and exact copy of the Civil Beat's "Price of Paradise" series that discusses not only the high costs of living in Hawaii, but also the consequences of that cost. Where federal law requires that businesses be attracted, particularly to a certain type of industry, such as civil rights law, the so called "price of paradise" is too high. I believe that attorneys' fees must be adjusted to at least those of attorneys' mainland counterparts.

30. I have attached as **Exhibit Four** a true and exact copy of the August 20, 2014 Star Advertiser article entitled "Honolulu No. 2 in cost of raising kids." Consistent with the remainder of costs in Honolulu, the cost of raising children in Honolulu is second only to Manhattan.

31. I have attached as **Exhibit Five** a true and exact copy of the August 19, 2014 Civil Beat article entitled "What's 100 Bucks Worth in Hawaii?" I have included a true and exact copy of the taxfoundation.org map, which publishes the result of that study and is cited in the Civil Beat article.

32. As a solo practitioner with an otherwise full caseload, this case has also placed a significant strain on my practice and family life.

33. A fee structure that punishes lawyers for focusing their efforts on significant, systematic societal harms committed by government forces creates a significant dilemma for the civil rights attorney: do I move to a jurisdiction where the cost of living is lower so that I can pursue those cases diligently? Or, do I simply refuse to accept cases when I know that I will be grossly underpaid for the time and effort that I necessarily expend to fight for the rights of the "little guy" in the "little" case. I have made significant efforts to alter my practice in such a way that I can focus primarily on civil rights violations and the prosecution of other violations of federal law. I currently have at least four other cases either pending or recently resolved before this

Court where damages are very low or even non-existent. In each of these cases, my clients and I seek social reform and/or constitutional compliance. However, at the rate previously awarded to me, I am highly discouraged from accepting other cases involving constitutional violations where my compensation cannot be supplemented by a contingency fee on a damages award, particularly those such as this, that require an extraordinary amount of work.

34. I believe the rate that I am requesting, *i.e.*, $355 per hour, is a fee I could demand from paying clients and, therefore, is required to be awarded in civil rights cases.

35. I have attached the Declaration of Kevin O'Grady and rely on in in part to support my requested fees. Mr. O'Grady demands a minimum of $350 per hour in matters as straightforward as quasi-criminal TRO hearings. I estimate that I average close to $350 per hour in representing citizens accused of OVUII (DUI). I have a case, simply challenging HPD's failure to disclose information pursuant to a Hawaii Information Practices Act request, that is billed hourly at a rate of $250 per hour. Should I alter my practice and/or abandon my morals, I could demand a $350 hourly fee.

36. Nevertheless, I have been previously awarded $200 per hour by this Court in another civil rights case. That case did not involve the sheer volume of

11

evidence as this case involves. I believe that $200 per hour leaves me grossly underpaid.

37. According to a five-year-old *Pacific Business News* article entitled "Mainland-Hawaii Salary Gap Grows," a "partner" with undefined skills and experience is said to bill at $250 per hour. I have attached a true and exact copy of that article as **Exhibit Six**.

38. The gist of that article is that Hawaii is losing the brightest and most skilled labor force to mainland competition because salaries are too low. This phenomenon is dubbed the "price of paradise." In other words, counsel is not being *attracted* to Hawaii but *deterred* from practicing here. In the face of a federal law such as 42 U.S.C. §§ 1983 and 1988, this price is too high.

39. The article states "[t]he legal profession in Honolulu pays an average of $78,270 a year, while the national average is $92,268, about 15 percent less, although that's a slight improvement over 2005, when the difference was 17 percent." It is unclear whether that "gap" has increased or decreased in the past five years. And, the gap is actually less than 15% as the article goes on to state "Honolulu attorneys make an average of $85,092 and on the Neighbor Islands they make even less, about $76,000, according to the Labor Department." Thus, the first statement clearly included non-attorney "legal profession[als]."

40. Moreover, I was not even awarded the rate that "partners" supposedly billed five years ago. I cannot fathom why I, as a solo practitioner (who must not only do the work of a "partner" and an associate attorney in its entirety, but also perform all administrative duties, without the benefit of an extensive staff or associates to assist me) would not be paid what an undefined "partner" billed five years ago. It is impermissible to assign a lower rate to a solo practitioner just because the solo practitioner must rely largely on "lead counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114-15 (9th Cir. 2008). And, none of the "big firm" partners will even take the cases that I have routinely taken leaving, most often indigent, victims of constitutional violations underrepresented in Hawaii.

41. Remarkably, the City does not even believe that the $200 per hour rate that I was previously awarded is fair or equitable. I have attached as **Exhibit Seven** a true and exact copy of the *Pacific Business News* Article entitled "City Will Spend Over $1 Million in Rail-Related Attorneys' Fees" showing that, starting three years ago, the City paid its own independent lawyers from Honolulu law firms (Kobayashi, Sugita & Goda, and Carlsmith Ball) between $295 and $495 per hour. In other words, the bottom-rung associate at those firms are billed at $295 per hour, despite their obvious inexperience. Those attorneys are not any more experienced in rail cases or any other cases

than Plaintiffs' counsel.  The requested rates were within or even less than those rates paid by the City to its own outside counsel.

42. I have reviewed the websites for both law firms named in the article attached as **Exhibit Seven**.  Kobayashi, Sugita and Goda's website reveals that they have eighteen partners and ten associates.  The partners range in experience from 49 years (Mr. Kobayashi) to 7 years (Jonathan Moore, who was licensed in Louisiana in 2007).  The associates range in experience from 0 to 7 years' experience. Notably, these attorneys were awarded fees in *Ko Olina Development*, *LLC v. Centex Homes*, 2011 WL 1235548 (March 29, 2011), cited in and attached to Plaintiffs' Motion.  It is clear from that opinion that, not only did the attorneys strategically petition this Court for rates less than those they actually charge, but that this Court reduced their requested fees further, imposing what appears to be the $350 "senior attorney" cap on Mr. Kobayashi.  The structure of Carlsmith Ball's website makes it difficult to analyze the varying degrees of their associates' and partners' experience.  However, there appear to be 77 attorneys employed at Carlsmith Ball with widely diverse levels of experience.

43. I believe that civil rights attorneys deserve a rate consistent with what the City pays its outside attorneys.  First, insofar as this Court could find that rail litigation is somehow "more complex" the complexity is subsumed in

the lodestar calculation as those attorneys will necessarily bill more hours. Second, the United States Supreme Court has specifically stated that civil rights cases should be treated the same as and rates not reduced from other complex cases such as "anti-trust litigation," *Blum v. Stenson*, 465 U.S. 886, 893 (1984), and the Ninth Circuit has specifically rejected the isolation of a certain type of case in a certain area for determining fee rates under fee-shifting statutes. *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053-54 (9th Cir. 2009) (rejecting Fourth Circuit's definition of "relevant community" which looked solely to other LHWCA cases in the same region in favor of a more broad definition). Third, the Hawaii Supreme Court has not found "rail" cases to be any more complex than other cases. *Kaleikini v. Yoshioka, et. al.*, No. SCAP-11-0000611 (Haw. May 2, 2013). A true and exact copy of the *Kaleikini* opinion is attached as **Exhibit Eight**.

44. As set forth in the accompanying memorandum, I have conducted an exhaustive review of attorneys' fees awarded by this Court. This Court has established a "cap" on senior attorney awards in civil rights cases at or about $350 per hour. The cap appears to not be based on empirical data, rates actually billed by the movant attorneys, or published rates of other firms. Instead, this Court's "knowledge" of the prevailing market rate appears to

15

trump any and all contradictory evidence. Less experienced attorneys' rates are reduced below this ultimate ceiling.

45. I believe this system of awarding rates to be unfair and impermissible. I am requesting only the rate at which I can demand in today's market. Moreover, the rate I am requesting is squarely within the range of rates to which the City pays its own outside attorneys.

## HOURS EXPENDED

46. I have reviewed and approved the time and charges set forth in the itemization of work performed in this case, and affirm to the best of my knowledge that the time spent and expenses incurred were reasonable and necessary under the circumstances.

47. I have attached as **Exhibit Nine** a true an exact copy of my timesheet, which has been "categorized" pursuant to Local Rule 54.3(d)(1). I maintained detailed notes of my hours throughout this litigation. I believe the entries to be accurate and as detailed as possible.

48. I have also exercised discretion in declining to bill for a significant number of hours that I have or could have expended on this case. The tasks and time for which I have not billed are indicated as "NO CHARGE" in both submitted timesheets. I also did not draft or file anything in response to the Attorney General's Answer and/or Memorandum in Opposition to the basic

Motion for Summary Judgment. In addition, I have expended several hours, which do not appear on the timesheets at all, discussing this case and strategizing with Attorney Beck.

49. I employ a legal assistant who has assisted me tremendously in this case. I have neither accounted for nor requested reimbursement for the hours he has spent in this case with the exception of service of summons, which was exacerbated by Defendant Louie's staff, which initially refused to accept service that was hand-delivered to his office.

50. Up to and including the instant motion and supporting declarations and having exercised billing judgment, I have reasonably expended 50.6 hours pursuing this matter after having exercised billing discretion, which I estimate to have resulted in a 10% reduction in the total hours and does not include the drafting of post-judgment motions. The total hours for which I am requesting compensation are 50.6 hours before the drafting of the instant motion.

51. As such, the total value of reasonable attorneys' fees attributable to my participation in this case is $17,963.

52. If I were awarded the rate a "partner" would bill five years ago ($250 per hour), my total award would be $12,650.

53. If I were awarded the rate previously awarded ($200 per hour), which I believe would leave me grossly underpaid, my total award would be $10,120.

54. Hawaii's GET tax will leave me with a 4.712% liability. Regardless of the amount awarded, I am requesting this Court award the full GET tax amount in addition to the awarded fee. The following, using the amounts specified above, illustrates both the GET amount and the total award depending on the amount the Court awards:

|       | Awarded Amount + | GET Tax | = | Total Award |
|-------|------------------|---------|---|-------------|
| @355  | $17,963.00       | 846.42  | = | 18,809.42   |
| @250  | $12,650.00       | 596.06  | = | 13,246.07   |
| @200  | $10,120.00       | 476.85  | = | 10,596.85   |

55. I have also spent 8.5 hours researching and drafting the attached Motion and Memorandum and preparing the exhibits. I am requesting $3,017.50 for preparing the instant documents. I am requesting the GET Tax liability for that award, which is an additional $142.18. The total award I am requesting for preparing the instant motion and documents is $3,159.68.

56. If I were awarded what a "partner" would bill five years ago, my award would be $2125 and the GET tax liability would be, and the GET Tax liability would be $100.13 for a total of $2225.13. If I were awarded what I

have been awarded previously in this Court, my award would be $1700, and the GET Tax liability would be $80.10 for a total of $1780.10.

57. I am seeking a total attorneys' fees award of $21,969.10 for my involvement in this case.

I, Richard L. Holcomb, declare under penalty of perjury under the laws of the state of Hawai'i that the forgoing is true and correct to the best of my knowledge.

DATED: Honolulu, Hawai'i; September 26, 2014.

s/ Richard Holcomb  
Richard Holcomb  
Attorney for Plaintiffs